Cite as 2023 Ark. App. 531

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-22-622

|  |  |  |
|---|---|---|
| | | Opinion Delivered November 15, 2023 |
| WILLIAM SANCHEZ | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04DR-19-1313] |
| V. | | |
| GLENN E. WEEKS | | HONORABLE DOUG SCHRANTZ, JUDGE |
| | APPELLEE | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**CINDY GRACE THYER, Judge**

Appellant William Sanchez appeals a Benton County Circuit Court decree divorcing him from the appellee, Glenn E. Weeks. On appeal, Sanchez argues that the circuit court erred in its division of the marital assets and debts, including its decision declaring the parties' home to be marital property and its allocation of Sanchez's 401(k) plan among Sanchez, Sanchez's ex-wife, and Weeks. Because the court erred in designating the parties' home as marital property and because it erred in its allocation of the 401(k), we reverse the court's division of marital property. Finally, we affirm the circuit court's allocation of marital debt.

William Sanchez and Glenn Weeks were married on November 6, 2015. Problems arose in the marriage, and in August 2019, Sanchez filed a complaint for divorce from

Weeks. Weeks answered and counterclaimed for divorce. The parties ultimately stipulated that Sanchez would be granted the divorce but disagreed as to the division of property. The disagreement centered on the division of the marital home, Sanchez's 401(k), and marital debt.

As to the marital home, the following evidence was adduced at the final hearing. While married, Sanchez and Weeks purchased land and obtained a construction mortgage with the anticipation of building a home together. In order to purchase the land, Sanchez sold a house he owned prior to his marriage to Weeks. It is undisputed that the house Sanchez sold was his separate, nonmarital property. That sale netted Sanchez $50,000, which he placed in a First Western bank account in his individual name.

Of the $50,000 Sanchez received from the sale of the home, Sanchez paid $10,000 for the lot and $5,000 for upfront costs for the construction of what was to be their marital residence. The remainder of the money needed to build the home was funded by a construction loan for which Sanchez and Weeks were jointly responsible. Sanchez claimed that he made all the payments on the construction loan during the marriage using his separate funds. Weeks, on the other hand, argued that he contributed approximately $800 a month to the household bills and believed that some of that money was used to pay the construction loan.

By the time the home was built and it was time to convert the construction loan to a traditional mortgage, Sanchez and Weeks had separated. Because he did not want any responsibility for payments on the house, Weeks requested that the mortgage company

prepare a deed to convey his interest in the home to Sanchez. On July 24, 2019, Weeks quitclaimed the property to Sanchez. As a result, Weeks was not included on the mortgage. After Weeks had signed over his interest, the parties discussed trying to salvage their relationship, but Sanchez filed for divorce two weeks later.

As for the 401(k), the evidence was slightly more complicated. Sanchez began working for Wal-Mart in 1996, prior to his marriage to Weeks. While he was employed by Wal-Mart, Sanchez contributed to his company's retirement plan and took advantage of its contribution matching program. At the time he began contributing to the plan, he was married to his first wife, Glexy Sanchez, now Gotopo. They divorced in 2006 after twenty years of marriage. Their divorce decree did not address the division of the 401(k) plan.

Sanchez continued to contribute to the 401(k) even after he married Weeks in November 2015, and Wal-Mart continued to match his contributions.

In February 2020, Gotopo petitioned to reopen the 2006 divorce case[1] to address the division of the 401(k).[2] In her petition in that case, Gotopo admitted that she and Sanchez had failed to include the equal division of the profit-sharing plan in the decree and requested

---

[1]The petition was filed in the same county as the current divorce action but was assigned to a different judge.

[2]The petition was filed on Gotopo's behalf by Sanchez's counsel in the current divorce action. This resulted in Weeks filing a motion for contempt for violation of the court's standing order prohibiting the parties from disposing of marital property. It was the failure of the court to rule on this motion that resulted in the dismissal of the prior appeal for lack of a final order. *Sanchez v. Weeks*, 2021 Ark. App. 493. On remand, the court dismissed the motion as moot.

that the court reopen their divorce case for the entry of a QDRO dividing the account equally between them. The court in the newly reopened 2006 divorce action granted the request and issued a QDRO dividing the 401(k) equally between Gotopo and Sanchez as of February 14, 2020—over four years into Sanchez and Weeks's marriage.

After the QDRO was entered by the court in the prior divorce case, Sanchez amended his complaint in the present action. In his amended complaint, Sanchez alleged in part that because the circuit court in the prior divorce action had found that Gotopo owned 50 percent of his retirement account through February 2020, Weeks was entitled to only 25 percent of the contributions and interest earned thereon since their marriage in November 2015.

As for the parties' debts, Sanchez argued that he used his separate funds to pay off marital debt, including credit cards, and that Weeks should be required to reimburse him for half of the debt. Weeks stated that he never asked Sanchez to pay off their marital debt with his separate funds and claimed that he gave Sanchez approximately $800 a month to pay their bills.

After reviewing the evidence, the court entered a divorce decree granting Sanchez a divorce from Weeks. As for the division of property, the court found the home to be marital property, despite the quitclaim deed from Weeks to Sanchez. The court ordered the property sold and the proceeds and any liability divided equally. The court took judicial notice of the QDRO entered in the prior divorce case between Sanchez and Gotopo and found that, because their divorce decree was silent in regard to the 401(k), Gotopo and Sanchez were

presumed to own the account equally. As a result, it found that they were entitled to share equally in the contributions and growth on the 401(k) through November 6, 2015. The court then stated that, as between Sanchez and Weeks, they were entitled to share equally in "all the accumulation in the 401(k) account by any contributions by either the employer or the employee or any growth or interest accumulated on the account" after November 6, 2015. Finally, as to the marital debt Sanchez claimed to have paid using his separate funds, the court refused to order Weeks to reimburse his share.

Sanchez has now appealed the court's division of property and debt. Because the court erred in its division of the real property and the 401(k), we reverse and remand for further proceedings. As to the court's division of the marital debts, we affirm.

Domestic-relations cases are reviewed de novo on appeal, but the appellate court does not reverse a circuit court's findings unless they are clearly erroneous. *Wilcox v. Wilcox*, 2022 Ark. App. 18, 640 S.W.3d 408. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Furthermore, a circuit court has broad powers to distribute property in a divorce to achieve equitable distribution; mathematical precision is not required. *Id.* In reviewing a circuit court's findings, we defer to the court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Id.*

I. *Real Property*

5

Sanchez first argues that the trial court erred in finding that the parties' home was a marital asset.  We agree.

All earnings or other property acquired by each spouse after marriage must be treated as marital property unless it falls into one of the statutory exemptions contained in Arkansas Code Annotated section 9-12-315(b) (Repl. 2020). *Wagoner v. Wagoner*, 294 Ark. 82, 740 S.W.2d 915 (1987). A gift is one of those exceptions.  Ark. Code Ann. § 9-12-315(b)(1); *Dozier v. Dozier*, 2014 Ark. App. 78, at 7, 432 S.W.3d 82, 86. The burden is on the party who asserts an interest in the property to establish that it is, in fact, separate property. *Aldridge v. Aldridge*, 28 Ark. App. 175, 773 S.W.2d 103 (1989).

Here, it is undisputed that, prior to the divorce, Weeks quitclaimed his interest in the property to Sanchez in exchange for being released from the liability on the mortgage. Arkansas Code Annotated section 18-12-401(a) provides that "[a] deed of conveyance of real property located in this state . . . by an individual to his or her spouse shall convey to the grantee named in the deed the entire interest of the grantor in the property conveyed, or the interest specified in the deed, as if the spousal relation did not exist between the parties to the deed." Ark. Code Ann. § 18-12-401(a) (Supp. 2023). The purpose of this section is to empower an individual to contract with his or her spouse in regard to real property in the same manner and to the same effect as if the spousal relation did not exist between the parties to the deed. Ark. Code Ann. § 18-12-401(d). Thus, under the statute, a quitclaim deed executed by one spouse to the other conveys the grantor spouse's interest therein to the grantee spouse. *See Ryan v. Roop*, 214 Ark. 699, 217 S.W.2d 916 (1949) (citing former statute

Ark. Stat. Ann. § 50-413). Because neither party alleged nor argued that the deed was invalid or that Weeks lacked the proper donative intent, the quitclaim deed of the property from Weeks to Sanchez in Sanchez's individual name resulted in a transfer or gift of Weeks's interest in the property to Sanchez, and the property became the separate property of Sanchez. *See Horton v. Horton*, 92 Ark. App. 22, 211 S.W.3d 35 (2005); *Cole v. Cole*, 53 Ark. App. 140, 920 S.W.2d 32 (1996); *Lyons v. Lyons*, 13 Ark. App. 63, 679 S.W.2d 811 (1984); *Dennis v. Younts*, 251 Ark. 350, 472 S.W.2d 711 (1971) (each finding deed of marital home from one spouse to another during the marriage resulted in the property becoming grantee spouse's separate property). In light of the foregoing, we reverse the circuit court's finding that the home was marital property.

## II. *Retirement Account*

Sanchez next argues that the circuit court erred in its division of his Wal-Mart retirement account by improperly awarding Weeks a larger percentage of the 401(k) than he was entitled to. He maintains that this error occurred because the circuit court failed to properly consider his ex-wife's interest in the retirement account. We agree that the court failed to give full consideration to the QDRO entered in the prior divorce action, and we reverse and remand for a recalculation of the parties' interest in Sanchez's 401(k).

As stated above, all property acquired subsequent to the marriage is considered to be marital property. Ark. Code Ann. § 9-12-315(b)(1). Retirement benefits based on contributions not made during the marriage constitute nonmarital property. *See Thomas v. Thomas*, 68 Ark. App. 196, 4 S.W.3d 517 (1999). Likewise, the increase in value of property

7

acquired prior to marriage, including retirement plans, is excepted from the definition of marital property. Ark. Code Ann. § 9-12-315(b)(5); *Smith v. Smith*, 32 Ark. App. 175, 798 S.W.2d 442 (1990). Conversely, retirement benefits based on contributions made during the marriage constitute marital property, as does the associated gain in value of such plan. *Wilson v. Wilson*, 2016 Ark. App. 256, 492 S.W.3d 534. As a result, any contributions made prior to the marriage, along with the corresponding associated growth, constitutes Sanchez's nonmarital property. Any contributions made after Sanchez married Weeks, along with its corresponding associated growth, constitutes marital property subject to division between Sanchez and Weeks. Accordingly, under normal circumstances, Weeks would clearly be entitled to one-half the retirement contributions made by Sanchez to the retirement account during the marriage as well as any interest and growth in the retirement account attributable to those contributions, which is what the circuit court appears to have given him.

Sanchez, however, argues that the court should have reduced Weeks's share in the retirement account because his ex-wife, Gotopo, is entitled to 50 percent of the contributions made during his marriage to Weeks pursuant to a QDRO Gotopo filed in her 2006 divorce from Sanchez. He claims that, as a result, Weeks is only entitled to a 50 percent interest in Sanchez's remaining half of the contributions and growth made to the retirement plan during their marriage—that is, Weeks is entitled to only 25 percent of the contributions to and growth in the 401(k) during the marriage. He claims that the court's failure to award Gotopo her entire interest in the retirement account amounts to reversible error.

The circuit court in this case took judicial notice of a facially valid QDRO[3] entered by a different court in a different case between two people, only one of whom is a party to this action. Since Gotopo was not a party to this action, the circuit court lacked jurisdiction to adjudicate or modify her claims to the retirement plan. Third parties may be brought into, or intervene in, divorce actions for the purpose of clearing or determining the rights of the spouses in specific properties, *Copeland v. Copeland*, 2 Ark. App. 55, 616 S.W.2d 773 (1981). In this case, neither was done. Thus, the circuit court in this divorce action had jurisdiction to determine, as between Weeks and Sanchez, only what constituted marital property to be divided.

---

[3]The resolution of this case has been complicated by the entry of this QDRO in the 2006 divorce action. This complication is rendered even more complex because it is not clear from our record whether the circuit court in the Sanchez-Gotopo divorce action was advised of Sanchez's marriage to Weeks or of their pending divorce prior to the entry of the QDRO at issue. It is also questionable whether Gotopo was actually entitled to any interest in the 401(k) because it is undisputed the 401(k) was not divided at the time of their divorce in 2006. Arkansas Code Annotated section 9-12-315 requires that marital property be divided at the time the divorce is granted. *Jones v. Jones*, 26 Ark. App. 1, 759 S.W.2d 42 (1988). Failure to assert the right to property at that time or to appeal results in the waiver of the right to that property when it is based solely on the marital relationship. *Id.*; *Mitchell v. Meisch*, 22 Ark. App. 264, 739 S.W.2d 170 (1987). Moreover, Arkansas Rule of Civil Procedure 60(b) only allows the circuit to modify a decree within ninety days in order to correct any error or mistake or to prevent the miscarriage of justice. After the expiration of the ninety-day period, a court lacks jurisdiction to distribute property not mentioned in the original decree if grounds for modifying a judgment under Rule 60(c) are not present. *Phillips v. Jacobs*, 305 Ark. 365, 807 S.W.2d 923 (1991); *Harrison v. Bradford*, 9 Ark. App. 156, 655 S.W.2d 466 (1983). Thus, if Gotopo is unable to prove any of the grounds listed in Rule 60(c), the court likely lacked jurisdiction to modify the divorce decree to provide for the division. These issues, however, are not before us and are issues to be decided between Sanchez and Gotopo (and possibly Weeks if he intervenes) in the 2006 divorce action.

But the court here did not limit its ruling to a simple calculation of the interests between Weeks and Sanchez. Instead, the court also recalculated Gotopo's interest in the 401(k), concluding that Gotopo was entitled to only 50 percent of the 401(k) through November 2015, despite the earlier QDRO defining her interest as 50 percent of the 401(k) through February 2020. The circuit court erred in recalculating her share of the retirement plan.

Because the court erred in failing to give full credit to the QDRO entered in the 2006 divorce action between Sanchez and Gotopo, and because that QDRO allocates to Gotopo an interest in the marital property of Sanchez and Weeks, we reverse the court's allocation of the 401(k) plan as between Sanchez and Weeks and remand for recalculation of their interests therein. In doing so, however, we make no comment on whether the circuit court on remand should render an equitable division or an equal division of the remaining 50 percent interest in the marital portion of the 401(k) as between Sanchez and Weeks.

III. *Division of Marital Debt*

As his final argument, Sanchez argues that the circuit court erred in failing to allocate a portion of the marital debt to Weeks. Sanchez claims that he paid a substantial portion of the parties' marital debt with his own premarital funds and that the court was required by equity to allocate 50 percent of those expenditures to Weeks. We disagree.

While Arkansas Code Annotated section 9-12-315 provides that all marital *property* shall be distributed one-half to each party unless the court finds such a division to be inequitable, it is well settled that section 9-12-315 does not apply to the division of marital

debts. *Kinder v. Kinder*, 2022 Ark. App. 476, 655 S.W.3d 880. We will not substitute our judgment on appeal as to the exact interest each party should have or what debt each party should be responsible for; we will decide only whether the order is clearly wrong. *Vaughn v. Vaughn*, 2021 Ark. App. 394. Here, the court could have found that Sanchez's payment of the marital debt using his nonmarital funds was a gift to the marriage. Thus, the court's refusal to order repayment of the marital debts was not clearly erroneous.

Affirmed in part; reversed and remanded in part.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Evans & Evans Law Firm*, by: *James E. Evans, Jr.*, for appellant.

*Joseph Paul Smith, P.A.*, by: *Heather Hersh*, for appellee.