Cite as 2021 Ark. 191

# SUPREME COURT OF ARKANSAS
No. CV-20-550

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 28, 2021 |
| MARGARET E. NALLEY | APPELLANT | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60DR-18-3721] |
| MICHAEL ADAMS | APPELLEE | HONORABLE VANN SMITH, JUDGE |
| | | AFFIRMED; COURT OF APPEALS OPINION VACATED. |

**KAREN R. BAKER, Associate Justice**

Appellant Margaret E. Nalley appeals from the Pulaski County Circuit Court's order granting appellee Michael Adams's motion for modification of custody of their daughter, M.A. The court of appeals reversed and remanded the circuit court's order. *Nalley v. Adams*, 2021 Ark. App. 167, 625 S.W.3d 336. Adams petitioned this court for review, which we granted on June 24, 2021. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Russell v. Russell*, 2013 Ark. 372, 430 S.W.3d 15. Nalley's sole point on appeal is that the circuit court erred in modifying the previous custody order after finding that Adams's change in employment and move to Little Rock constituted a material change in circumstances. We affirm.

On May 10, 2017, M.A. was born out of wedlock to Nalley. Nalley, Adams, and M.A. lived together in Jonesboro until October 3, 2018, when Nalley and Adams separated. Nalley moved to Little Rock, and on October 5, Nalley filed a complaint for paternity adjudication and child support in the Pulaski County Circuit Court. In her complaint, Nalley requested that the circuit court declare Adams to be the father of M.A. Nalley also asserted that it is in M.A.'s best interest that Nalley remain the primary caretaker and hold legal custody of M.A.

On July 17, 2019, the circuit court entered its written order finding that both parties acknowledge that Adams is M.A.'s father. The circuit court found that "[t]he parties stipulate that they shall have joint legal custody of [M.A.] with the mother serving as the primary caregiver." The order further provided:

> 3. <u>Shared time</u>. The mother lives in Little Rock, Arkansas and the father lives in Jonesboro, Arkansas, a travel time of slightly over two hours. The parties lived together in Jonesboro until October 3, 2018 when they separated and the mother moved to Little Rock in search of employment.

> 4. . . . The mother has now obtained employment at Baptist Hospital[.] The father is an anesthesiologist in Jonesboro and, up to the present date, worked not only his shifts at a hospital but also moonlighted in Siloam Springs, Arkansas and worked other doctors' shifts in Jonesboro for additional compensation. The father states that he has now decided to only work his required shifts so that he will have more time available to visit with their daughter.

> 5. The Court finds that both parties are suitable to provide the care, love and nurture for the minor child. Both are medical professionals, well-educated and capable of making good decisions for their daughter. It is a compliment to both parties that they understood and agreed that there should be joint custody of the child recognizing that the shortfalls of either party were insufficient to prevent a joint custodial relationship. To say it another way, both parties recognize that the other party is, and can be, a proper parent for the child.

6. Unfortunately, the parties live two hours away from each other which makes it difficult to fashion a schedule so that both parties will have adequate time with the minor child. To complicate matters, the mother indicated that she works three 12-hour shifts. . . . The father submitted a schedule for days he is off from his work, but the schedule provides little flexibility.

7. The Court has considered the desires of both parties, the recommendation of the attorney ad litem and the work schedules of both parties in trying to fashion a shared visitation schedule for the parties and their two-year-old child. The parties are encouraged to offer flexibility to the other party as much as possible.

. . . .

10. Both parties are free to request additional visitation with the minor child at any reasonable time. Particularly, if the father elects to visit the child in Little Rock for an overnight, he must give the mother reasonable notice. Reasonable notice is at least 24 hours in advance. If the mother has plans for that night, additional time for visitation is to be arranged.

The circuit court also provided a specific visitation schedule.

On December 30, 2019, Adams filed a motion for contempt alleging that Nalley has systematically refused to let him have additional time with M.A. On January 22, 2020, Nalley filed an amended response stating that she has allowed, and continues to allow, additional visitation.

On February 24, 2020, Adams filed an amended motion for contempt and for modification. Adams again asserted his contempt allegations against Nalley. Further, Adams stated that he was relocating to Little Rock due to his employment in Hot Springs beginning in July 2020. Therefore, because the circuit court's previous order awarded joint custody, Adams was entitled to equal time with M.A.

3

On February 25, Nalley filed a response to the amended motion for contempt and for modification. Nalley asserted that in order to promote stability, predictability, and continuity in M.A.'s life, the parties' custody order should not be modified.

On June 29, 2020, the circuit court held a hearing on Adams's motions. On July 8, 2020, the circuit court entered its written order finding that after the visitation schedule was set in the July 2019 order, Adams immediately began requesting additional time with M.A. After considering the evidence provided by Adams, the circuit court found that Nalley was not in contempt of court, and it made the following findings regarding custody:

> 7. Custody. The Plaintiff remains living in Little Rock, Arkansas with the minor child and the Defendant has now relocated to Little Rock, Arkansas but works in Hot Springs, Arkansas at a pain clinic.
>
> 8. The Defendant alleges a material change in circumstances since he is now in Little Rock, Arkansas and has a favorable work schedule of 8:00 a.m. to 4:00 p.m. Monday through Thursday. The Defendant points out that the Court found that both parties are "suitable to provide care, love and nurture for the minor child," both are "well-educated and capable of making good decisions for their daughter" and both "agree that there should be joint custody of the child recognizing that the shortfalls of either party were insufficient to prevent a joint custodial relationship." The Defendant requests that the parties share equal time with the minor child.
>
> 9. The Defendant's material change of circumstances is that he now lives in Little Rock, Arkansas, has a set schedule favorable to taking care of the minor child and that he would like to spend more time with the child.
>
> 10. Normally, the material change of circumstances has to do with the opposing party. In this case, the Plaintiff's circumstances have not changed. The Plaintiff still works at Baptist Hospital and provides the everyday nurture and care for the child other than when the Defendant has visitation with the child.

11. However, *the Court has already ordered, and the parties agreed, that they shall have joint legal custody of the child. The only reason in the initial Order that the parties did not share equal time with the child was that the Defendant lived in Jonesboro, Arkansas and the Plaintiff and child lived in Little Rock, Arkansas. Since the Defendant has moved to Little Rock, there is no discernable reason why each party could not share equal time with the parties' three-year-old child. The law is clear in Arkansas that joint custody with equal time is favored.*

12. The Court orders that the parties shall share joint custody with the minor child with the Plaintiff and the Defendant alternating weeks with an exchange on Friday after school. The Court, however, continues the order that Plaintiff shall be the final decision maker regarding all medical and educational decisions for the child but only after the Defendant has provided his input in all decisions.

(Emphasis added.) Nalley appeals.

## I. *Standard of Review*

In reviewing domestic-relations cases, appellate courts consider the evidence de novo. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699. We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). When the question whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses and their testimony. *Baber, supra.*

## II. *Point on Appeal*

For her sole point on appeal, Nalley argues that the circuit court erred in finding that Adams's change in employment and move to Little Rock constituted a material change in

circumstances that warranted modification of child custody to grant Adams equal time with M.A. To support her position, Nalley relies on our statement acknowledging "the majority view that a change of circumstances of the noncustodial parent, including a claim of an improved life because of a recent marriage, is not sufficient to justify modifying custody." *Jones v. Jones*, 326 Ark. 481, 490, 931 S.W.2d 767, 771 (1996) (citing Jeff Atkinson, *Modern Child Custody Practice* § 9.07, at 462–63 (1986)). Nalley also relies on our statement in *Jones* that the noncustodial parent "cannot use the circumstances he created as grounds to modify custody." *Jones*, 326 Ark. at 491, 931 S.W.2d at 772.

Adams responds that the circuit court correctly found that his move to Little Rock was a material change in circumstances sufficient to modify custody. Adams further responds that due to circumstances beyond the control of either party, he was able to secure employment closer to Little Rock, which resolved the time-sharing issue that was present at the time of the original order. Adams notes that but for the distance between the parties at the time of the original order, equal time between the parties was contemplated by entering into a joint custodial relationship.

We agree with the circuit court's disposition for the following reasons. While we recognize the parties' respective positions regarding a material change in circumstances, our review of the record leads us to conclude that a material-change-in-circumstances analysis is not triggered in this case as neither party sought an actual change of custody. Further, we note that the case before us does not present an issue of visitation because the parties

6

maintain joint custody.[1] Stated differently, based on the specific facts of this case, the narrow issue before us is an adjustment of parenting time previously ordered by the circuit court. In its July 17, 2019 original order, the circuit court awarded joint custody to Nalley and Adams. The circuit court recognized that because Adams lived in Jonesboro, it was impossible at that point to split time equally between the parents. Seven months later, through his amended motion for contempt and modification, Adams notified the circuit court that he was relocating to Little Rock and sought to exercise equal time with M.A. Because Adams had relocated to Little Rock and based on its previous award of joint custody in the original order, the circuit court ordered that the parties share equal time with M.A. Although the circuit court used the phrase "modification of the custody and visitation schedule," a careful review of the record demonstrates that the circuit court simply adjusted the parenting time schedules of the respective parties because Adams had moved to Little Rock, enforcing its July 2019 order. Specifically, in its original order awarding joint custody, the circuit court found that

> both parties are suitable to provide the care, love and nurture for the minor child. Both are medical professionals, well-educated and capable of making good decisions for their daughter. It is a compliment to both parties that they understood and agreed that there should be joint custody of the child recognizing that the shortfalls of either party were insufficient to prevent a joint custodial relationship. To say it another way, both parties recognize that the other party is, and can be, a proper parent for the child.

---

[1]Joint custody means the approximate and reasonable equal division of time with the child by both parents individually as agreed to by the parents or as ordered by the court. Ark. Code Ann. § 9-13-101(a)(5) (Supp. 2021).

7

However, because of Adams's location in Jonesboro, the circuit court recognized that at the time of the 2019 order, shared time was impossible. Once Adams relocated to Little Rock, in its July 8, 2020 order, the circuit court reiterated its July 2019 order of equal time and found:

> [T]he Court has already ordered, and the parties agreed, that they shall have joint legal custody of the child. The only reason in the initial Order that the parties did not share equal time with the child was that the Defendant lived in Jonesboro, Arkansas and the Plaintiff and child lived in Little Rock, Arkansas. Since the Defendant has moved to Little Rock, there is no discernable reason why each party could not share equal time with the parties' three-year-old child. The law is clear in Arkansas that joint custody with equal time is favored.

Accordingly, given our standard of review and the specific facts in this case, we cannot say that the circuit court erred in enforcing its original order through the adjustment of parenting time.

Affirmed; court of appeals opinion vacated.

WOOD, J., concurs.

KEMP, C.J., dissents.

**RHONDA K. WOOD, Justice, concurring.** I write simply to state that courts have misinterpreted *Jones* for too long, and it's time for this court to correct those mistakes. *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767. As the dissent quotes, in *Jones* we said the noncustodial parent "cannot use the circumstances he created as grounds to modify custody." *Jones*, 326 Ark. at 491, 931 S.W.2d at 772. But context matters, especially in domestic-relations cases. In *Jones*, the father's actions contributed to the dissolution of his

8

marriage and instability for the child when he began a relationship with another woman. Then, when he married that woman, he claimed his new marriage brought him more stability, warranting a change in circumstances. *Jones*, 326 Ark. at 490, 931 S.W.2d at 771.

Contrast those facts with the facts of this case. Nalley and M.A. moved away from Adams to Little Rock, which necessarily reduced the time Adams spent with his daughter. Adams remedied this physical-distance obstacle when his professional circumstances changed, and he took that opportunity to move to Little Rock. The circuit court found at the initial custody hearing that Adams was equally suitable to care for M.A. The court also had found that "both parties are free to request additional visitation with the minor child at any reasonable time. Particularly if the father elects to visit the child in Little Rock...." If anything, the circuit court encouraged Adams to spend more time with M.A than he had allocated. Thus, after Adams moved to Little Rock, the circuit court equally divided the parents' time with M.A., which adequately reflects the public policy of this State. The circuit court's decision to reallocate time was not an abuse of its discretion.

**JOHN DAN KEMP, Chief Justice, dissenting.** The majority opinion has affirmed a Pulaski County Circuit Court custody order, holding that "we cannot say that the circuit court erred in enforcing its original order through the adjustment of parenting time." In doing so, the majority has created a new domestic-relations doctrine called "parenting time"— apart from custody or visitation—because "neither party has sought an actual change of custody." The facts below show otherwise. In my view, this case clearly involves a modification of custody, and I would reverse and remand. Therefore, I respectfully dissent.

9

## I. *Facts*

The following facts are relevant to my analysis and are largely omitted from the majority opinion. Throughout the litigation, the parties have referred to their requests for custody in their pleadings before the circuit court. Prior to the original 2019 order, Adams responded to Nalley's complaint with a counterclaim for paternity and custody and requested that he "be granted custody of the minor child." In her answer to Adams's counterclaim, Nalley stated that she "denie[d] that it is in the best interests of the minor child that [Adams] be awarded custody of the child . . . and state[d] affirmatively that this would be contrary to the best interests of the minor child." The circuit court stated in its July 17, 2019 order that "[t]he parties stipulate that they shall have joint legal custody of the minor child with the mother serving as the primary caregiver." No one disputed that the circuit court's ruling meant that Nalley had received primary physical custody of the child. The parties did not appeal the July 17 order.

Five months later, on December 30, 2019, Adams moved for contempt and for modification. On February 24, 2020, Adams filed an amended motion for contempt and for modification, stating,

13. *There has been a material change in circumstance warranting a modification of custody* in that due to the change of employment, due to third parties, [Adams] is relocating to Little Rock, Arkansas.

14. *It is in the child's best interest that the parties share joint custody of the minor child* with each party exercising equal time.

(Emphasis added.) Nalley responded to Adams's amended motion for contempt and for modification, stating,

> 13. That [Nalley] is without sufficient knowledge or information to admit or deny [Adams's] claim that he is relocating to Little Rock due to a change of his employment as alleged in paragraph thirteen. To the extent a response is required, paragraph thirteen is denied. [*Nalley*] *specifically denies that* [*Adams's*] *return to Little Rock, if true, would constitute a change in circumstances that warrant*[s] *modifying custody.*
>
> 14. *That* [*Nalley*] *denies that it is in M.A.A.'s best interest that custody should be modified.* Pleading affirmatively, in order to promote stability, predictability, and continuity in M.A.A.'s life, the parties' custody order should not be modified based on changes that occur exclusively in [Adams's] life and which are of [his] own making.

(Emphasis added.)

The circuit court conducted a hearing on Adams's motion for modification of custody and held its ruling in abeyance. On July 8, 2020, the circuit court entered its order, stating,

> 4. *There are two primary issues raised by* [*Adams*]: No. 1, contempt of [Nalley], and, *No. 2, a modification of the custody* and visitation schedule, as well as child support.
>
> . . . .
>
> 11. [T]he Court has already ordered, and the parties agreed, that they shall have joint legal custody of the child. . . . *The law is clear in Arkansas that joint custody with equal time is favored.*
>
> 12. *The Court orders that the parties shall share joint custody with the minor child*[.]

Having ruled on joint legal custody in its original 2019 order, the circuit court modified custody in its July 8, 2020 order and concluded that "the parties shall share joint custody with the minor child[.]" Because the circuit court noted that Arkansas favors "joint custody

11

with equal time," I read the circuit court's ruling of "joint custody" to mean "joint physical custody with equal time."

## II. *Modification of Custody*

### A. Applicable Law

On appeal, Nalley contends that the circuit court erred in finding that changes occurring in Adams's life—new employment and relocation to Little Rock from Jonesboro—constituted a material change in circumstances warranting a modification in custody. This court considers the evidence de novo and will not reverse unless the circuit court's findings of fact are clearly erroneous. *McNutt v. Yates*, 2013 Ark. 427, at 8, 430 S.W.3d 91, 97.

The primary consideration in child-custody cases is the welfare and best interest of the children, and all other considerations are secondary. *Alphin v. Alphin*, 364 Ark. 332, 340, 219 S.W.3d 160, 165 (2005). A judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the circuit court or were not known by the circuit court when the original custody order was entered. *Id.*, 219 S.W.3d at 165. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.*, 219 S.W.3d at 165. The reasons for requiring these more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child, and to discourage the repeated litigation of the same issues. *Id.*, 219 S.W.3d at 165. The party

seeking modification has the burden of showing a material change in circumstances. *Id.*, 219 S.W.3d at 165.

Factors for determining a material change of circumstances include, but are not limited to, one parent's relocation, the passage of time, remarriage of one or both parents, strained relationship between the parent and child, and the preference of the children. *McCoy v. Kincade*, 2015 Ark. 389, at 5, 473 S.W.3d 8, 11. In deciding whether a modification of custody is in a child's best interest, the circuit court should consider factors such as the psychological relationship between the parents and their children, the need for stability and continuity in the child's relationship with his or her parents and siblings, the past conduct of the parents toward the children, and the reasonable preference of the children. *Bamburg v. Bamburg*, 2014 Ark. App. 269, at 8, 435 S.W.3d 6, 11–12.

Nalley cites *Jones v. Jones*, 326 Ark. 481, 491, 931 S.W.2d 767, 772 (1996), for the proposition that Adams could not use the circumstances he created--locating to Little Rock--as grounds to modify custody. This court has stated, in the context of child-custody modification, that an appellant "cannot use the circumstances he [or she] created as grounds to modify custody." *Id.* at 491, 931 S.W.2d at 772. Mrs. Jones appealed the circuit court's decision ordering a change in custody where the court had relied, in part, on Dr. Jones's recent remarriage to support its finding that a material change in circumstances had occurred. *Id.* at 489, 931 S.W.2d at 771. This court observed that Dr. Jones married his present wife five months after the parties' divorce and that he admitted at trial that their relationship predated the parties' divorce. *Id.* at 490, 931 S.W.2d at 771. This court also

noted Dr. Jones's admission at oral argument that, at the time of the original divorce decree, it was within his reasonable contemplation to remarry. *Id.* This court concluded that Dr. Jones could not use the circumstances he later created as grounds to modify custody and held that "[g]iven his awareness of the circumstances at the time he voluntarily entered into the agreement to award custody . . . to Ms. Jones, we cannot agree that his remarriage constituted a material change in circumstances." *Id.* at 491, 931 S.W.2d at 772.

### B. Analysis

In the case at bar, I disagree with the circuit court's ruling modifying custody for the following reasons. First, in light of this court's holding in *Jones*, Adams cannot use the very circumstances that he later created as grounds to modify custody—notably, when he attempted to modify the original order a mere five months later. This court has a more stringent standard for modifications than for initial custody determinations. *Lloyd v. Butts*, 343 Ark. 620, 625, 37 S.W.3d 603, 606 (2001). Under a more stringent standard, I would hold that the circuit court erred in modifying custody solely on this basis.

Second and most significant, the best interest of this young child is the polestar in every child-custody case. *Taylor v. Taylor*, 345 Ark. 300, 304, 47 S.W.3d 222, 224 (2001). While I applaud a loving relationship between Adams and his young child, I must also adhere to our precedent that original custody orders serve to promote stability and continuity in the life of the child and to discourage the repeated litigation of the same issues. *Lloyd*, 343 Ark. at 625, 37 S.W.3d at 606. Factoring the need for the child's stability in this instance is paramount. Thus, given our strict standard in modification cases, I conclude that Adams has

14

failed to show a material change of circumstances that would warrant uprooting the child.

Accordingly, I would reverse and remand to the circuit court for further proceedings.

*Mann & Kemp, PLLC*, by: *Harrison Kemp*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Traci LaCerra*, for appellee.