Cite as 2024 Ark. App. 72

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II & IV
**No.** CV-22-495

|  |  |
|---|---|
| | **Opinion Delivered** February 7, 2024 |
| DAVID HEILEMAN<br>APPELLANT | APPEAL FROM THE POINSETT COUNTY CIRCUIT COURT [NO. 56DR-17-53] |
| V. | |
| ARIEL CAHOON<br>APPELLEE | HONORABLE MARY LILE BROADAWAY, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

David Heileman appeals the circuit court's order that modified his custodial time with his children and found him in contempt for failing to pay alimony and child support. He argues that the custodial-time modification amounts to a loss of joint custody and that the court erred in finding him in contempt for failing to pay alimony. We affirm the circuit court's order.

In August 2017, the Poinsett County Circuit Court entered a divorce decree that incorporated the parties' property, child custody, and support agreement. Pertinent to this appeal, the agreement provided that the parties would share joint custody of their two children, MC1 (two years old) and MC2 (one year old), with Cahoon having primary custody and Heileman having secondary custody. Heileman would have the children every other weekend (6:00 p.m. Friday until 6:00 p.m. Sunday) as well as "overnight visitation every Tuesday and Wednesday from 5:00 p.m. until the children are returned to school, or

9:00 a.m." As to summer visitation, the parties agreed to alternate weekly throughout the entire summer.

The agreement also provided that Heileman would pay $1000 a month in child support, that he would maintain health insurance for the children, and that the parties would each pay one-half of all medical expenses not covered by insurance. Finally, Heileman would pay alimony in the amount of $500 a month for 216 months; however, the alimony obligation would immediately terminate "without the necessity of a court order" if Cahoon remarried, cohabitated with a romantic partner, or moved outside Poinsett or Craighead County.

In August 2021, Cahoon petitioned for a modification of the custodial arrangement and argued that there had been a substantial and material change in circumstances since the entry of the divorce decree. Specifically, Heileman is working and living primarily out of state, which prevents him from exercising the custodial time that he was awarded; the "back and forth" required when he is in the area has been and will continue to be detrimental to the children; and Heileman is unable to support the children as evidenced by his failure to pay child support as ordered. Cahoon also alleged that Heileman was in contempt of court for failing to pay child support, failing to pay the required amount of alimony, and failing to provide health insurance for the children as ordered. She requested that the court modify the prior order and grant her full custody of the children and a judgment for all arrearages owed.

The circuit court held a hearing on 4 April 2022, at which Cahoon explained that the children are now seven and five years old and that things had gotten more difficult with

consistency and stability for them. In July or August 2020, Heileman, who is a surgical technician, started traveling for work, and Cahoon agreed to work with him on scheduling. Heileman works primarily in Lexington, Kentucky, which is approximately six and a half hours from Jonesboro. His work contract changes every three months, and the "always changing" schedule caused difficulty for Cahoon and her current husband because they "could not make plans."[1] Cahoon told him that the situation "wasn't working" and worried that the inconsistency was "chaotic" for the children, especially during the school year. The children do not know who is picking them up from school or how long they are going to stay at one home or the other. Heileman's absences also cause problems or delays with parent-teacher conferences and making appointments for the children. She asked that she be given full custody during the school year but agreed that a "week on/week off" schedule could be used over the summer. Cahoon did not believe that a "week-on/week-off" schedule during the school year would be best for the children because it takes the children several days to get back into the routine of each household.

Cahoon also explained that she had married her current husband, Michael Cahoon, in June 2018. Heileman had not paid any alimony as ordered, and under the terms of the parties' agreement, she was owed nine months' worth of alimony, or $4500. As to child support, Cahoon knew that Heileman had struggled financially at times and agreed to give him more time to pay if needed, but she had not ever said that he did not have to pay child support. He paid the full $1000 a few times at first but later sporadically gave her random

---

[1]Cahoon's husband is a pilot who arranges his schedule a month in advance.

checks for random amounts. Cahoon estimated that Heileman owed $36,835 in child support and alimony. Heileman had also paid for a few months of the children's activities (dance, gymnastics), but Cahoon and her husband primarily pay for all of the activities. Heileman had also not paid for the children's health insurance past the first month or two after the divorce. He did have the children enrolled in ARKids First.

After Cahoon's testimony, Heileman moved for a directed verdict[2] on the change in custody and argued that there was "no evidence that some change in circumstances has occurred, that has detrimentally affected the children." Cahoon responded that Heileman lives half the time in Kentucky, which is "not within the concept of . . . joint custody." The motion was denied.

Christina Thomas, the operating-room manager at the hospital where Heileman works, explained that he typically works seven days on, five days off, or eight days on, six days off. The hospital is aware of his custodial schedule and is willing to accommodate the schedule and any special requests he may have. However, Thomas was not aware that Heileman's custody schedule included Tuesday and Wednesday nights.

Heileman testified that he lives in Jonesboro with his current wife and their two children. At the time of the divorce, he was not in a good financial position because the cattle company that he and Cahoon owned was in the middle of bankruptcy. He took over the company through the divorce and attempted to save it, but he was unsuccessful. He

---

[2]Because this was a bench trial, Heileman's motion is properly characterized as a motion to dismiss. *See* Ark. R. Civ. P. 50(a) (2023) (stating that "[i]n nonjury cases a party may challenge the sufficiency of the evidence at the conclusion of the opponent's evidence by moving either orally or in writing to dismiss the opposing party's claim for relief").

was also attending school. He worked construction and waited tables to have an income but ultimately filed for bankruptcy in 2020 or 2021. In September 2020, he began working as a traveling surgical technician. He said he was "doing everything [he] could" to pay toward his child-support obligation in the years after the divorce. He explained that he "was under the impression that her and I had an understanding, that we would assist each other, that when she needed help, I would help her." He claimed to have paid Cahoon $24,000 over the years as well as $21,250 in the week before the hearing. He did not pay the majority of the required alimony because he thought Cahoon and her now husband were living together. He also explained that he had insurance coverage available for the children through his employment.

According to Heileman, he and Cahoon had never followed the custody schedule prescribed in their divorce decree because "[it] was hard on the children." His work schedule "was tailored to" Cahoon and they "just kind of worked around each other." Exercising his custodial time has been "seamless" for the children, and he and Cahoon have worked "really well" together. On cross-examination, he agreed that it would be a "hardship" to exercise the court order as it currently stands, specifically the Tuesday/Wednesday custodial time, and that he "[didn't] want to."

The circuit court took the matter under advisement, and on April 11 issued a written order with the following findings:

> 2. The Court finds that there has not been sufficient evidence to overcome the presumption of joint custody and therefore the joint custodial arrangement shall remain as is with the Defendant, Ariel Cahoon, remaining the primary physical custodian and the Plaintiff, David Heileman being the secondary custodian.

5

3. The Court does find that there has been a change in circumstances sufficient to modify the parties' custodial schedule due to the Defendant's out of town work schedule and the fact that the children are now of school age. Due to the children's need for stability and consistency the parties' physical custodial schedule shall be as follows:

During the school year, the Plaintiff shall have his custodial periods with the minor children from Thursday afternoon when school recesses until Monday morning when school resumes on the second and fourth weekends of the month.

After school recesses for the summer, the parties shall alternate weeks on a seven (7) days on, seven (7) days off basis.

Holiday visitation shall be exercised in accordance with the visitation schedule promulgated in the second judicial district, a copy of which is attached to this Order.

4. The Court wants to promote cooperation between the parties but strongly encourages both of them to adhere to the schedule as much as possible.

5. The court finds that the Plaintiff is in contempt of this Court's previous order for his failure to pay the Defendant alimony. The Court notes that he unilaterally made the decision not to pay alimony and actually testified that he did not intend to pay it before he entered into the Property Settlement Agreement. The Court further finds that the Plaintiff is in contempt for his failure to pay child support in accordance with the Order of the Court. The parties must realize that once their agreements are reduced to a court order, then they are expected to comply therewith or seek court approval of any modification. The Court will defer any sentencing on the finding of contempt for ninety (90) days. The Plaintiff may purge himself of contempt by paying the balance of $17,540.01, which is $13,040.01 in back child support and $4,500.00 in back alimony.

Heileman has timely appealed the court's order.

In reviewing child-custody cases, we consider the evidence de novo but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Fudge v. Dorman*, 2017 Ark. App. 181, 516 S.W.3d 306. A finding is clearly erroneous when, although there is evidence to support it, the reviewing

6

court is left with a definite and firm conviction that a mistake has been made. *Baker v. Murray*, 2014 Ark. App. 243, 434 S.W.3d 409. Deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Fudge, supra.*

## I. *Modification of Custodial Time*

Heileman argues that the circuit court's modification of the custodial schedule is essentially a modification of custody and has denied him "approximate and reasonable equal division of time with the child[ren]," which is the definition of joint custody. See Ark. Code Ann. § 9-13-101(a)(5) (Repl. 2020). Therefore, he argues, the circuit court should have been required to find a material change of circumstances before making such a change. Heileman further argues that the record does not support a finding of a material change in circumstances. He contends that the reasons cited by the circuit court—Heileman's out-of-town work schedule and the fact that the children had reached school age—are insufficient to constitute a material change in circumstances. Nevertheless, he asserts, he has now been "punished for securing out-of-state employment by having his custodial time with the minor children reduced by more than fifty percent (50%)." Finally, Heileman also contends that the circuit court erred in not making a best-interest finding. He argues that the circuit court "merely found that the children's need for stability and consistency" warranted the modification to the custodial schedule, but there was no evidence of this "need" other than Cahoon's opinion and speculation that a week-to-week schedule during the school year would be hard on the children and "too much back and forth."

As an initial matter, because the circuit court did not modify the parties' joint custodial arrangement, there is no need for this court to conduct a material-change-in-circumstances analysis. The Arkansas Supreme Court established this principle in *Nalley v. Adams*, 2021 Ark. 191, 632 S.W.3d 297. In *Nalley*, the unmarried parties had a child together and lived together in Jonesboro; they separated when the child was approximately seventeen months old; and the mother moved to Little Rock, filed for a paternity adjudication and child support, and requested that she remain the primary caretaker of the child. The parties later stipulated that they would share joint legal custody with the mother serving as the primary caregiver, and the father was awarded visitation.

Approximately seven months after the stipulated order had been entered, the father moved for a modification of his visitation. The father alleged a material change in circumstances because he had relocated to Little Rock and had a favorable work schedule. He asserted that because the circuit court's previous order awarded joint custody, he was entitled to equal time with the child. After a hearing on the matter, the circuit court found that the parties shared, and would continue to share, joint custody; that the "only reason in the initial Order that the parties did not share equal time with the child was that the Defendant lived in Jonesboro, Arkansas and the Plaintiff and child lived in Little Rock, Arkansas"; and that because the father had moved to Little Rock, "there is no discernable reason why each party could not share equal time with the parties' three-year-old child." *Id.* at 5, 632 S.W.3d at 300. The court noted that normally, the material-change-of-circumstances analysis has to do with the opposing party, but in this case, the mother's

8

circumstances had not changed. The court ordered a physical custody schedule of alternating weeks.

On appeal, the mother argued that the circuit court erred in finding that the father's change in employment and move to Little Rock constituted a material change in circumstances that warranted modification of child custody to grant him equal time with the child. In its analysis, the supreme court observed that the case presented neither a change in custody nor a change in visitation, so "a material-change-in-circumstances analysis is not triggered." *Id*. at 6, 632 S.W.3d at 301. Instead, the "narrow issue before us is an adjustment of parenting time previously ordered by the circuit court." *Id*. at 7, 632 S.W.3d at 301. And given the standard of review and the facts of the case, the supreme court held that the circuit court had not erred in "enforcing its original order through the adjustment of parenting time." *Id*. at 8, 632 S.W.3d at 302.

We see no meaningful difference between the facts of this case and *Nalley*. Like the circuit court in *Nalley*, the circuit court here did not change the joint-custody designation or grant Heileman "visitation," it simply adjusted the parties' physical custodial schedule during the school year due to a change in circumstances—not a "material" change in circumstances. When the original agreement was signed, both parties lived in Jonesboro, and the children had not reached school age. After Heileman made the decision to work full time in Lexington, Kentucky, it was not possible for him to exercise his custodial time as set forth in the agreement. Therefore, the circuit court eliminated the Tuesday/Wednesday custodial time and enlarged Heileman's weekend custodial time from two nights to four nights. In addition, the circuit court reasoned that the modification was

9

necessary for the "stability and consistency" of the children, which are important considerations in cases involving children. The appellate courts do not require a circuit court to use "magic words" if it is obvious that the circuit court considered the child's best interest. *Wilson v. Wilson*, 2013 Ark. App. 759, at 9, 431 S.W.3d 369, 374.

The dissent primarily argues that the parties shared "equal" parenting time before the circuit court entered its latest order, and the court violated the preference for joint custody without a sufficient reason. This position is based on the handwritten calendars provided by Heileman for January, February, March, and April 2022. Those calendars show that Heileman was off work and thus had the children (according to his testimony) approximately fourteen days a month, though the days of the week and the length of time varied. However, whatever the parties had agreed to on a monthly or bimonthly basis does not have the power and effect of a court order. Further, it was clearly not a workable arrangement for at least one of the parties—hence, Cahoon's petition for a modification of the standing court order to achieve more consistency for herself and the children.

Given the record and our standard of review, we hold that the circuit court did not clearly err in modifying Heileman's custodial schedule. First, to reiterate, the court's modification applies only to the time the children are in school. Under the parties' original agreement, Heileman was granted visitation from Friday evening to Sunday evening every other weekend and every Tuesday and Wednesday evening. So, for every fourteen days, Heileman had six nights with the children. Under the circuit court's modified schedule, Heileman has the children from Thursday afternoon to Monday morning every other week; in other words, four nights for every fourteen days. This is not a 50 percent decrease in

10

physical custodial time. This adjustment serves to make the schedule less disruptive for the children, which the court could have found to be in their best interest. Finally, to the extent that Heileman claims that he could alter his schedule or return to local employment, he is always free to return to court and request a change to the physical-custody schedule should those events actually occur.

## II. *Contempt*

As noted above, the circuit court found Heileman in contempt for not paying alimony and child support as ordered. The court stated that it would defer sentencing on the finding of contempt for ninety days, allowing him to purge himself of contempt by paying the balance due. Heileman has appealed the court's order, but we hold that the contempt order in this case did not impose a sanction and contemplates further judicial action, so it is not appealable. An order of contempt is not final and appealable if no sanctions have been imposed. *Shafer v. Est. of Shafer*, 2010 Ark. App. 476; *Taylor v. Taylor*, 26 Ark. App. 31, 758 S.W.2d 222 (1988). An order merely announcing the court's determination of the rights of the parties but contemplating further judicial action is not appealable. *Shafer, supra*. In addition, Ark. R. App. P.–Civ. 2(a)(13) provides that a contempt order is appealable when it "imposes a sanction and constitutes the final disposition of the contempt matter."

Affirmed.

GLADWIN, KLAPPENBACH, and GRUBER, JJ., agree.

VIRDEN, J., concurs.

BARRETT, HIXSON, MURPHY, and BROWN, JJ., dissent.

11

**BART F. VIRDEN, Judge, concurring**.

POLONIUS:    What do you read, my lord?

HAMLET:      Words, words, words.[1]

"Custodial time," "parenting time," "custody," "primary custody," "joint custody," "visitation," "material change of circumstances" . . .

These are just some of the words that our courts—both circuit and appellate—have wrestled with and relied upon in determining which party in a domestic-relations child-custody and visitation case will bear the responsibility and privilege of raising his or her children and to what degree. No doubt, it is desirable for litigants, lawyers, and trial courts to expect consistency in how these cases will be judged. Unfortunately, the ever-changing semantic manipulation of these words or concepts, or the understanding of the meaning of these words and concepts, have created anything but consistency and certainty.

Question: Can there ever be a change of custody without a change in visitation and vice versa?  I think not.  (Unlike efforts given in sporting events, when it comes to time, 100% is all there is.) However, the outcome of these cases often depend on just what label is settled on.

Two things are certain. One, our legislature has determined that joint custody is the favored public policy in Arkansas. Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (Supp. 2021); *Saul v. Saul*, 2023 Ark. App. 251. If true joint custody means that the parents share roughly equal time with the children, *Smith v. Smith*, 2023 Ark. App. 521, that provides a starting

---

[1]William Shakespeare, *Hamlet, Prince of Denmark* act II, sc. 2, 191.

point. Unfortunately, a 50/50 division of "parenting time" is not always possible. As such, the law provides for exceptions. *See, e.g.*, *Wakefield v. Bell*, 2018 Ark. App. 120, 542 S.W.3d 908 (affirming circuit court's award of physical custody to mother because the parties could not get along); *Buskirk v. Buskirk*, 2018 Ark. App. 417, 559 S.W.3d 285 (affirming reinstatement of primary custody of child to mother after considering one of many factors, including that the parties lived in different states); *Gray v. Gray*, 96 Ark. App. 155, 239 S.W.3d 26 (2006) (reversing and remanding award of joint legal custody when parents could no longer cooperate in raising them). The second certainty is that the one constant in our courts' decisions is the pronouncement that "[t]he best interest of the children is the polestar in every child-custody case; all other considerations are secondary." *Knesek v. Knesek*, 2023 Ark. App. 148, at 5. Nonetheless, it often seems to be the last factor in the child-custody and visitation analysis.

The very fact that our court has split 5–4 on this case—with good and valid points put forth by both the majority and the dissent—is proof enough that the law on this matter has become unwieldy and unpredictable, at best, and confusing, at worst.

It is time for a cleansing and simplification. Whether this comes from the legislative branch or our supreme court, it is now due. If, in fact, the polestar consideration is the best interest of children, isn't it time to toss out the semantics in favor of one standard in these disputes? Start with the presumption of joint custody. If that will not work due to the circumstances of the parents or the children, the matter should be presented to the circuit court, which will have one task: to determine what arrangement is in the best interest of

the children. Not a simple task, but a simple standard. It eliminates the competing phraseology to find a favorable standard to be applied.

We have often stated that we know of no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as in those involving children. *Waldon v. Youngblood*, 2023 Ark. App. 353. From there, our appellate standard of review is well established as follows:

> This court performs a de novo review of child-custody matters, but we will not reverse a circuit court's findings unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. We recognize and give special deference to the superior position of a circuit court to evaluate the witnesses, their testimony, and the child's best interest.

*Wallis v. Holsing*, 2023 Ark. App. 137, at 4, 661 S.W.3d 284, at 287 (citations omitted).

I concur with the majority in the case now before us because I believe that with or without the "magic words," the trial court made just such a best-interest and common-sense decision that was not clearly erroneous.

**STEPHANIE POTTER BARRETT, Judge, dissenting**. The majority does not hold the circuit court to the required standard of proof required to drastically modify visitation in a joint custodial parent relationship, seems mired in the past, and refuses to accept the fact that the law has changed to favor joint custody and equal time of possession by joint custodians. Instead of zealously safeguarding the rights of a joint custodial parent, it seeks to justify a court clearly ignoring the public policy of the state, and therefore, I must dissent.

In 2013, the legislature made a profound change in the law governing joint custody of children. The law that governs the award of joint custody is found in Arkansas Code Annotated section 9-13-101(a)(1)(A)(iii) & (a)(5) (Supp. 2023). As used in this section, joint

14

custody means the approximate and reasonable equal division of time with the child by both parents individually as agreed to by the parents or as ordered by the court. Since 2013, joint custody has been the favored arrangement in Arkansas. Ark. Code Ann. § 9-13-101(a)(1)(A)(iii). This was a distinct departure from prior case law holding that joint custody was disfavored unless circumstances warranted divided custody. *See Hansen v. Hansen*, 11 Ark. App. 104, 106, 666 S.W.2d 726, 727 (1984).

While visitation is always modifiable, courts require more rigid standards for modification than for initial determinations in order to promote stability and continuity for the children and in order to discourage repeated litigation of the same issues. *Martin v. Scharbor*, 95 Ark. App. 52, 55, 233 S.W.3d 689, 692–93 (2006). The party seeking a change in the visitation schedule has the burden to demonstrate a material change in circumstances that warrants a change in visitation. *Id.* The best interest of the children is the main consideration. *Id.* In this case, the circuit court found that there was not a material change in circumstance to warrant modification of custody and made no best-interest finding whatsoever. Without the requisite findings, the circuit court erred in modifying visitation.

On April 11, 2022, the circuit court entered a written order finding there had not been sufficient evidence presented to overcome the presumption of joint custody; therefore, the joint-custody arrangement would remain as previously ordered. Yet, the circuit court held that there had been a change in circumstance sufficient to modify the parties' custodial schedule due to Heileman's out-of-town work schedule and "the fact that the children are now of school age." This court has previously rejected the conclusion that a child's aging is a material change in circumstances. *Harrington v. Harrington*, 55 Ark. App. 22, 928 S.W.2d

15

806 (1996). Thus, the court's reliance on the children becoming school age as justification to modify visitation is an error.

In his testimony, David recognized that if the current agreement of the parties was terminated, he would have difficulty keeping his job and his visitation time per the decree. However, that admission did not give carte blanche to the trial court or the majority to strip him of his equal visitation time awarded in the joint-custody agreement and to ignore his rights to equal visitation time pursuant to the statute when there was a viable option presented to obtain the objectives of both maintaining his job and having equal visitation time. If it would have been impossible for David to arrange his schedule to provide him with equal visitation time, a reduction in his visitation may have been the only option. However, David's contact manager, Ms. Christine Thomas, provided undisputed evidence that he could both maintain his job and enjoy his right to equal visitation time. The majority recognizes Ms. Thomas's testimony only for the purpose of showing that she was not aware of the Tuesday and Wednesday visitation schedule in the original order. That comment is completely irrelevant to the issue of equal visitation time. Her relevant testimony clearly showed she could and would set David's schedule to allow him to exercise his equal visitation time on a week on, week off schedule. However, rather than fashion a modification of the visitation schedule in which David could exercise equal time, the court chose to strip him of what he was entitled to by law. In its rush to affirm this case, the majority ignores the law providing a joint custodian equal time. David proved beyond a preponderance of the evidence that he could maintain his visitation time by working a week on and a week off.

The circuit court's decision reduces David's visitation time for almost ten months of the year from 50 percent to 20 percent. Equal visitation awarded during the ten-week summer recess is not in keeping with the public policy of this state for joint-custodial parents to share equal time. In this case, the majority approves of Cahoon having custody 80 percent of the time during the school year (twenty-four days versus six days) and equal time for the remaining ten weeks of summer recess. No matter how the majority wants to calculate it, the court has awarded Cahoon either 70 percent (majority calculation considering a few hours before bedtime on a Thursday night to be a day of visitation) or 80 percent of the children's time during the school year. Clearly, the joint custodians are not sharing equal time in this case. Chief Judge Harrison was exactly correct when he wrote in his previous dissent to *Nalley v. Adams*, 2021 Ark. App. 167, at 16, 625 S.W.3d 336, 346 (Harrison, C.J., dissenting), *vacated*, 2021 Ark. 191, 632 S.W.3d 297, "I am with Justice Louis Brandeis when he said, 'If we desire respect for the law, we must first make the law respectable.'" When the legislature has made it clear that Arkansas's public policy supports and favors joint custody with equal time, to simply ignore it does not promote respect for the law.

The majority finds no meaningful difference between the facts of this case and *Nalley*, 2021 Ark. 191, 632 S.W.3d 297. I find that the cases are in sharp contrast. While both cases are joint-custody arrangements, the supreme court in *Nalley* adjusted visitation to allow equal parenting time, while in this case, the court is adjusting parenting time to disallow equal parenting time. In order to strip a joint custodial parent of the equal time as favored by law, there must be a showing of a material change in circumstances and that the change is in the best interest of the children. To do otherwise is a de facto change in custody. This

17

court has rejected de facto changes in custody when the requisite findings were not made. In *Kennedy v. Kennedy*, 19 Ark. App. 1, 715 S.W.2d 460 (1986), the circuit court found the mother had been awarded sole custody of the child in the divorce decree entered in 1981. The father had been awarded standard visitation of alternating weekends and six weeks in the summer. In April 1985, the father filed a petition seeking a change of permanent custody based on allegations of material changes in circumstances that affected the best interest of the child. After a hearing on that petition, the court expressly found that there had been no such material change in circumstances as would warrant a change in custody but that the child's best interest required an increase in the father's visitation to Monday through Friday for three weeks plus one weekend each month. There was no evidence that the mother was not adequately tending to the child's physical and emotional needs or that her home was not stable and financially secure. The mother appealed to this court, alleging that this decision was a de facto change of custody. In view of the evidence and the court's finding that there had been no material change in circumstances warranting a change in custody, "we [held] that the order of the court was an unauthorized change of custody which should be reversed."

The majority justifies the circuit court's finding that because the children had reached school age, modification will promote stability and consistency for them. In *Harrington*, 55 Ark. App. 22, 928 S.W.2d 806, this court rejected the children's age as a factor to support a material change of circumstance. Likewise, it is an error to use the children's age as a factor to warrant a change in visitation. The majority further justifies the circuit court's finding that the children's need for stability and consistency is a factor for modification of

visitation; however, the legislature rejected this stance when it enacted Ark. Code Ann. §

9-13-101(b)(1) favoring joint custody and equal time, knowing that the children will have

two homes that can provide stability. The court failed to adapt to these legislative changes

or simply ignored those changes that recognized a preference for divorced parents to share

equal time with their children unless clear and convincing evidence demonstrates it is not

in the best interest of the children. Ark. Code Ann. § 9-13-101(b)(1); *see Singletary v.*

*Singletary*, 2013 Ark. 506, 431 S.W.3d 234. Because the best interest of the children was

not considered and the legislative preference of equal time for joint custodians was blatantly

ignored, I would reverse and remand.

HIXSON, MURPHY, and BROWN, JJ., join.

**KENNETH S. HIXSON, Judge, dissenting**. In the realm of modification of child

joint-custody law, *Nalley v. Adams*,[1] may well be a watershed moment. For decades, as a

prerequisite for a moving party to be successful in a petition for a change of custody or a

change of visitation, Arkansas law has required the circuit court to find a material change of

circumstances between the parties *and* determine the best interest of the children.[2] This is

---

[1] 2021 Ark. 191, 632 S.W.3d 297.

[2] If the arrangement had been the traditional primary custody with reasonable visitation, then clearly a change in visitation would require a finding of material change of circumstances and best interest of the children. In *Martin v. Scharbor*, 95 Ark. App. 52, 55, 233 S.W.3d 689, 692–93 (2006), we stated:

> While visitation is always modifiable, courts require more rigid standards for modification than for initial determinations in order to promote stability and continuity for the children and in order to discourage repeated litigation of the same issues. The party seeking a change in the visitation schedule has the burden to demonstrate a material change in circumstances that warrants a change in visitation.

19

true in both traditional primary-custody-with-reasonable-visitation arrangements and in joint-custody arrangements. The reason behind what has been described as a "stringent standard" is to promote stability and continuity for the children and in order to discourage repeated litigation of the same issues.

In *Nalley*, in reviewing a requested modification of a joint-custody arrangement, the supreme court coined a new amorphous descriptive term and established a new concept in modifying joint-custody arrangements. However, the *Nalley* opinion did not provide guidance to the bench nor the bar on how to apply this new concept. The *Nalley* court coined the heretofore unused phrase "parenting time," and for the first time, the *Nalley* court authorized a circuit court to adjust the parties' "parenting time" with their children without calling the adjustment a "change of custody" or a "change of visitation." This is important because if *Nalley* had referred to this adjustment of parenting time as a change of custody or visitation, that would have required the circuit court to follow decades of change-of-custody law and the requirements of proving a material change of circumstances *and* the best interest of the children. Perhaps the *Nalley* court coined the new phrase and concept because the time the parents spend with their children in a joint-custody arrangement

---

The best interest of the children is the main consideration. There are several factors to take into consideration when determining reasonable visitation, including: (1) the wishes of the children; (2) the capacity of the party desiring visitation to supervise and care for the children; (3) problems of transportation and prior conduct in abusing visitation; (4) the work schedule or stability of the parties; (5) the relationship with siblings or other relatives.

(Citations omitted.)

20

cannot be called "visitation" because neither party has "visitation" per se in joint-custody arrangements. Hence, the *Nalley* court coined the phrase "parenting time" and apparently held that the circuit court did not have to find a material change of circumstances nor determine the best interest of the children. As with all new jurisprudence concepts, we all anticipated *Nalley* would have growing pangs. It did not take long. This case represents, for the first time, the narrow issue of "when does a circuit court's adjustment of 'parenting time' constitute a de facto change of custody" that, in turn, requires the circuit court to find the traditional material change of circumstances *and* the best interest of the children. That is the case before us.

A cursory review of *Nalley* is helpful. In *Nalley,* the mother resided in Little Rock and the father resided in Jonesboro. Despite this long-distance separation of residences, the mother and father of the minor child agreed to a joint-custody arrangement. Time passed, and the father moved closer to Little Rock and requested additional time with his child. The mother refused, and the case proceeded to trial. The circuit court agreed with the father and increased the time the father was allowed with his child. The mother, Nalley, appealed. The mother argued inter alia that there was not a material change in circumstances. In affirming the circuit court's order, the *Nalley* court stated: "While we recognize the parties' respective positions regarding a material change in circumstances, our review of the record *leads us to conclude that a material-change-in-circumstances analysis is not triggered in this case as neither party sought an actual change of custody. . . .* Stated differently, based on the specific facts of this case, the narrow issue before us is an adjustment of parenting time previously ordered by the circuit court." *Nalley*, 2021 Ark. 191, at 6–7, 632

S.W.3d at 301 (emphasis added). The *Nalley* court concluded without any additional guidance, "Accordingly, given our standard of review and the specific facts in this case, we cannot say that the circuit court erred in enforcing its original order through the adjustment of parenting time." *Id*. at 8, 632 S.W.3d at 302.

To the case at bar. The circumstances between the parents clearly changed. These changes are set forth sufficiently in the majority opinion. Suffice it to say, the father (Heileman) changed jobs, which required significant additional travel time making it difficult to participate in a typical joint-custody arrangement. The mother (Cahoon) filed a "*Petition for Contempt . . . Including a Modification of the Custodial Arrangement Between the Parties*." (Emphasis added.) In the mother's prayer for relief, the mother prays the court to "*modify the prior orders of the court to grant the Petitioner full custody of the minor children*." (Emphasis added.) The father filed an answer denying the allegations and the request for relief. The father went into the hearing with some semblance of joint custody. Depending on which party to believe, his "parenting time" days were somewhere between 50/50 and 40/60 with the mother. The father came out of the hearing with "parenting time" with his children *only every other weekend*. In my view, that radical adjustment in parenting time constituted a de facto change of custody that required the circuit court to find a material change of circumstances *and* determine the best interest of the children.

The majority is of the opinion that this is a "*Nalley*" case. I disagree for two reasons. First, in *Nalley,* the supreme court specifically held that a traditional change–of–custody material-change-of-circumstances analysis was not required because neither party in *Nalley* filed a motion to change custody, "[*which*] *leads us to conclude that a material-change-in-*

22

*circumstances analysis is not triggered in this case as neither party sought an actual change of custody.*" *Nalley*, 2021 Ark. 191, at 6, 632 S.W.3d at 301. That is not true in the case at bar. Clearly, the mother, Nalley, filed a motion to change custody as quoted above. Therefore, the very foundation upon which *Nalley* was built is not present here.

The second reason I believe that *Nalley* is not authority for the case at bar is that the change of parenting time awarded the mother was to such a degree as to constitute a de facto change of custody, which triggers the traditional change-of-custody and visitation requirements. In *Kennedy v. Kennedy*, 19 Ark. App. 1, 3, 715 S.W.2d 460, 461 (1986), this court reversed an award increasing time spent with the children because such a drastic change constituted a change of custody:

> The appellant brings this appeal relying on our well-settled rule that a change of custody cannot be ordered unless there had first been established a material change in the circumstances which affects the child's best interest or a showing of facts affecting that best interest which were not presented to or known by the court at the time the custodial custody order was entered. *She argues that the court's order is in fact a change in permanent custody contrary to our announced rule rather than a mere modification of visitation rights.* The appellee does not contend that the chancellor's finding that there was not such a material change affecting the interest of the child which would warrant a change in custody was erroneous. He contends that the court was merely exercising its discretion to make such adjustments in visitation as recent circumstances may have indicated. *The narrow issue for us to decide is whether the order appealed from constitutes an impermissible change of permanent custody or a mere clarification or modification of visitation rights.*

> We agree with the statement of the Texas court in *Leaberton v. Leaberton*, 417 S.W.2d 82 (Tex. Ct. App. 1967), *that it is as impossible to draw an exact line marking a change from one color to another in a rainbow as it is to draw an exact line marking the change from visitation to a modification of custody in cases involving children. There is a time, however, when the difference is apparent and must be recognized.* We shall not attempt to point out the exact dividing line distinguishing the two but have no doubt that this case involves a change in permanent custody and not a mere change in visitation privileges regardless of the terminology used in the order.

(Some internal citations omitted and emphasis added). The same is true here, and we should adopt the above rationale and language: "We shall not attempt to point out the exact dividing line distinguishing the two but have no doubt that this case involves a change in permanent custody and not a mere change in visitation privileges regardless of the terminology used in the order." *Kennedy*, 19 Ark. App. at 3, 715 S.W.2d at 461.

The majority suggests that the end result in the circuit court's order was supported by the evidence. The end result may be reasonable. Considering the new circumstances vis-à-vis the parties, perhaps the mother should have parenting time during the week, and the father should have parenting time every other weekend. However, we do not review cases for only the end result. The process matters. The law matters. Another way to say it is that the ends do not justify the means. We long ago disposed of that concept. That, in a nutshell, is the significance and gravity of due process.

Here, the circuit court based its analysis on *Nalley* and short-circuited *the process*. The majority urges us to view and rely on the terminology used by the circuit court where it continued to describe the custodial relationship as "joint custody" as dispositive, or at least persuasive, on the issue. Despite a radical change of parenting time, the circuit court maintained that the parties still enjoyed "joint custody." The majority reasons that because the circuit court maintained the "joint custody" moniker, *Nalley* allows the court to adjust the parents' respective parenting time at will, even without an analysis of the best interest of the children. Clearly, merely considering and relying on the moniker "joint custody" as retained by the circuit court is not a proper disposition of the matter. What if the court had given the father one day of "parenting time" and the mother the rest of the month and still

24

called it joint custody? I would hope that this court would have no difficulty holding that the circuit court erred. So, the description of the relationship or the moniker used by the circuit court certainly cannot be dispositive or, perhaps, even relevant. On review, we often eschew the title of a pleading and look at the allegations or request for relief contained therein to determine the appropriateness of the pleading. *Nalley*, for the first time, forces the courts to drill deeper into a change in a joint-custody relationship and this concept of "parenting time." It is difficult, as the *Kennedy* court stated, *to draw an exact line marking a change from one color to another in a rainbow*. However, the change analysis should be performed keeping in mind the decades-old law of proving a material change of circumstances *and* the best interest of the children. *Nalley* did not overturn the prior law; *Nalley* was only a development of prior law in light of the legislature's stated preference for joint custody. The circuit court used *Nalley* to radically change the parenting time of the parties and yet called it joint custody, thereby excusing itself from finding a material change of circumstances *and* what is in the best interest of the children. To promote stability and continuity for the children and in order to discourage repeated litigation of the same issues, I would reverse.

MURPHY, J., joins in this dissent.

*Streit & Streit*, by: *Jonathan R. Streit* and *Elizabeth James Streit*, for appellant.

*Emerson Law Firm*, by: *Scott Emerson*, for appellee.

25