Cite as 2024 Ark. App. 390

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-568

| | | |
|---|---|---|
| | | Opinion Delivered June 5, 2024 |
| ANDREA SELLEW | APPELLANT | APPEAL FROM THE PULASKI, COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. 60DR-15-1086] |
| V. | | |
| JACOB DAVIS | APPELLEE | HONORABLE SHAWN J. JOHNSON, JUDGE |
| | | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Andrea Sellew appeals from an order of the Pulaski County Circuit Court that granted appellee Jacob Davis's motion for reallocation of parenting time and ordered each party to have equal parenting time with their thirteen-year-old daughter, MC. On appeal, Andrea argues that the circuit court erred in finding that a material change in circumstances was not necessary for a modification of the custody and visitation provisions in the parties' divorce decree. Andrea argues in the alternative that the circuit court erred in finding that it was in MC's best interest to modify the custody and visitation awards in the divorce decree. We affirm.

The disposition of this appeal hinges on whether the parties' divorce decree awarded Andrea primary custody of MC or whether it awarded the parties joint custody. Andrea

argues that the divorce decree awarded her primary custody, while Jacob argues that it awarded joint custody. Traditionally, in determining whether a change in custody is warranted, the burden is on the moving party to show a material change in circumstances. *See, e.g.*, *Chaffin v. Chaffin*, 2011 Ark. App. 293. However, in the watershed case *Nalley v. Adams*, 2021 Ark. 191, 632 S.W.3d 297, the supreme court held that the material-change-in-circumstances analysis is not triggered when the parties maintain joint custody and neither party seeks an actual change of custody; in that event, the trial court may enforce its original order through the adjustment of parenting time.

## I. *Facts and Procedural History*

The parties divorced in Duvall County, Florida, in November 2012, at which time MC was two years old.[1] The divorce decree stated that the parties had reached an agreement resolving all pending issues, which was incorporated therein. The divorce decree provided that "the parties shall abide by the Parenting Plan which is attached hereto and incorporated herein." The divorce decree also ordered Jacob to pay child support.

At the time of the parties' divorce, they had been living in Jacksonville, Florida, where Jacob was stationed on active duty with the U.S. Navy. However, Jacob had recently been reassigned to a naval base in Annapolis, Maryland, which is more than seven hundred miles from Jacksonville, Florida. Therefore, when the parties divorced, they contemplated that

---

[1]The divorce decree was styled "Consent Final Judgment of Dissolution of Marriage." We refer to it herein as the divorce decree.

2

Jacob would be living in Annapolis, Maryland, while Andrea would remain in Jacksonville, Florida.

The Parenting Plan that was attached to the divorce decree lists Andrea's address in Jacksonville, Florida, and Jacob's address in Annapolis, Maryland. It provides, "This Parenting Plan is submitted to the court with the agreement of both parties."

The Parenting Plan contains the following pertinent provisions:

Shared Parental Responsibility: It is in the best interests of the child that the parties have full shared parental rights and responsibilities to confer and make major decisions affecting the welfare of the child. Major decisions include, but are not limited to, decisions about the child's education, healthcare, and other responsibilities unique to this family. Each parent shall make decisions regarding day-to-day care and control of the child while the child resides with or is with that parent.

It further provides, "Division of Shared Parental Responsibilities: All major decision regarding the child shall be shared between Mother and Father." The Parenting Plan also states, "Both parents shall have equal and independent authority to confer with the child's school, day care, health care providers, and other programs with regard to the child's educational, emotional, and social progress." Under the subtitle "Child's Rights," it states that MC has a right to "[h]ave both parents to love without fear of anger or guilt from either parent" and to "[d]evelop an independent and meaningful relationship with each parent and to respect the differences of each parent and their home." The Parenting Plan contains no provision for either party to have final decision-making authority in the event the parties were unable to mutually agree on major decisions affecting the child.

Under the subtitle "Scheduling," the Parenting Plan provides:

3

Goal: It is the parties' goal to share time with the child as equitably as possible by accommodating their respective schedules, considering the minor child's school calendar, and taking into consideration the timesharing schedule as set forth below. The parties acknowledge and agree that the schedule set forth herein may change from time to time depending upon work schedules, school calendars, etc.

It also provides:

It is acknowledged that the child has a right to spend substantial time with both parents. Both parents are expected to provide access to the child at unscheduled times if requested and if to do so does not unreasonably disrupt prior planned activities of the child or the parent with whom the child is timesharing.

Under the subtitle "Timesharing as to the Child," the Parenting Plan states that "[m]other shall have the majority timesharing with the minor child." The Parenting Plan then provides that, until MC enters kindergarten, Jacob shall have seven consecutive days every month with MC and that

[u]pon the child entering kindergarten, the parties shall timeshare the minor child as more particularly set forth below. Father shall be entitled to and shall have the following minimum timesharing rights with the child and Mother shall have timesharing with the minor child at all other times.

(Emphasis in original.) This subsection then provides that Jacob may exercise timesharing on alternate weekends in the vicinity of Andrea's residence and that this would include any three-day weekend of any given month. With respect to holidays and summers—applicable both before and after MC entered kindergarten—Jacob was awarded timesharing during Christmas and Thanksgiving breaks every other year; spring break every year; and the entire summer, subject to Andrea's timesharing on alternate weekends in the vicinity of Jacob's residence.

The Parenting Plan also contained the following provision:

4

DESIGNATION FOR OTHER LEGAL PURPOSES: The child named in this Parenting Plan is scheduled to reside the majority of the time with Mother. This parent is designated as the custodian of the child solely for purposes of all other state and federal statutes which require a designation or determination of custody. This designation does not affect either parent's rights and responsibilities under this Parenting Plan.

We observe that the terms "primary custody" or "primary caretaker" appear nowhere in the Parenting Plan, and the Parenting Plan never uses the term visitation but repeatedly references timesharing with MC. We also observe that the Parenting Plan does not use the term "joint custody."

In August 2014, the Florida court issued a "Consent Judgment Modifying Final Judgment of Dissolution of Marriage." This judgment provided that Andrea shall be permitted to permanently relocate with MC to Little Rock, Arkansas, which relocation had already transpired. The judgment further provided:

> This Court shall relinquish jurisdiction and further subject matter jurisdiction to enforce or modify the provisions of the Final Judgement is relinquished to the State of Arkansas regarding all post-dissolution matters, including those concerning the minor child. Arkansas is the new home state of the minor child pursuant to the provision of the UCCJEA. Each party specifically subjects themselves to the personal jurisdiction over each, respectively, in the State of Arkansas, and any further proceedings for enforcement or modifications shall occur in the State of Arkansas.

Consistent with the provisions of this judgment, Andrea relocated to Pulaski County, Arkansas, where she continues to reside.

In March 2015, Andrea filed in Pulaski County Circuit Court a petition to register foreign decree, asking that both the "Consent Final Judgment of Dissolution of Marriage" and the "Consent Judgment Modifying Judgment of Dissolution of Marriage" entered in

Florida be registered in Arkansas. In her petition to register foreign decree, Andrea stated that "[t]he divorce awarded the parties *joint legal custody* of the minor child with Petitioner having the majority timesharing with the minor child." (Emphasis added.) In August 2016, Andrea filed an amended petition to register foreign decree wherein she again made the above-quoted statement. In her amended petition, as she had previously alleged in her original petition, Andrea also stated that "she is the custodial parent under the orders and is the party seeking registration" and that "Jacob is the non-custodial parent under the orders." In Jacob's response to Andrea's amended petition to register foreign decree, he admitted Andrea's allegation that the divorce decree awarded the parties joint legal custody of MC with Andrea having the majority timesharing with MC. Jacob stated further:

> In response to paragraph 7, he denies that Petitioner is the custodial parent and that he is the non-custodial parent. Instead, he states that the parties share joint custody of their minor child, that they have shared parental responsibilities, and that they have a time sharing plan. Although Petitioner has majority timesharing, he has extensive <u>minimum</u> timesharing as provided in the plan.

(Emphasis in original.) Jacob did not object to Andrea's request to register the Florida orders in Arkansas. In November 2015, the Pulaski County Circuit Court entered an "Agreed Order of Registration of Foreign Decree" finding that the Florida orders should be given full faith and credit by the State of Arkansas and that they are registered in Pulaski County for all enforcement and modification purposes that may be necessary.

On May 9, 2022, Jacob filed in Pulaski County Circuit Court a "Motion for Reallocation and Modification." In his motion, Jacob stated that pursuant to the Parenting Plan incorporated into the parties' divorce decree, the parties are to have "full shared

6

parental rights and responsibilities to confer and make major decisions affecting the welfare of the child," and "it is the parties' goal to share time with the child as equitably as possible." Jacob asserted that until 2021, the parties resided in different states but that Jacob and his family now reside in Pulaski County, Arkansas. Jacob alleged that "[d]ue to the age of the minor child and the closeness in proximity of [Jacob] and the child's siblings to the child, it is in the best interest of the minor child to reallocate the shared parenting time to each party receiving equal parenting time with the child." Jacob requested a reallocation of parenting time to equal parenting time and for a modification of his child-support obligation.

On May 24, 2022, Andrea responded to Jacob's motion for reallocation and modification, asking that it be denied. In a pretrial brief filed on January 3, 2023, Andrea alleged that "[t]here has been no substantial change of circumstances and it is not in the best interest of the child to reallocate the time."

On January 10, 2023, the circuit court held a hearing on Jacob's motion for reallocation and modification. The parties argued whether the divorce decree granted primary custody to Andrea or whether it granted the parties joint custody, in which case Jacob would not be required to prove a material change in circumstances under the supreme court's precedent in *Nalley*, 2021 Ark. 191, 632 S.W.3d 297. The circuit court found at the hearing that the language in the Parenting Plan, which was incorporated into the divorce decree, awarded the parties joint custody.

Jacob testified that it was his understanding that under the Parenting Plan the parties shared custody but had a specific timesharing plan because of their schedules and his service

in the Navy. Jacob testified that he was on active duty in the Navy until May 2020 and that he remained in Annapolis, Maryland and entered the Navy Reserve. Jacob remained in the Navy Reserve until November 2021.

Jacob stated that in 2019, while he was still in the Navy, he started a business with a partner in the Annapolis area. He stated that it took time to establish the business and that he was eventually able to relocate his portion of the business to Arkansas. Jacob testified that he moved to Pulaski County around June 2021.

Jacob testified that he had remarried about eight years ago and that he and his wife have three sons. He stated that MC has a good relationship with her younger brothers and that MC is very close with Jacob's wife.

Jacob testified that after he moved to Arkansas, he reached out to Andrea and requested equal parenting time with MC. He stated that Andrea agreed to allow him three-day weekends with MC during his alternate weekend timesharing. They continued this arrangement for almost a year, but Jacob wanted equal timesharing. He stated that when Andrea became uncooperative, he filed his motion for reallocation asking for equal parenting time.

Andrea testified that she is a labor and delivery nurse at UAMS. Andrea has remarried and she and her husband have two daughters. Andrea stated that MC has a strong bond with Andrea's husband and with MC's younger sisters.

Andrea stated that, before Jacob moved to Arkansas, Jacob would exercise his summer and holiday visits with MC but that Jacob's parents—who live in Arkansas— exercised his

alternating weekend visits with MC. Andrea acknowledged that after Jacob relocated to Arkansas, she allowed him to have MC for three-day weekends on alternating weeks but stated that she retracted the schedule to regular alternating weekends after he filed his motion for reallocation of parenting time. Andrea stated that she objects to equal parenting time and sees no reason to change MC's environment where she has been thriving.

At the end of the hearing, the circuit court announced from the bench that the parties have joint custody according to the terms of the divorce decree and that *Nalley* "seems to be very applicable here" and "very analogous." The circuit court announced that under the joint-custody arrangement it would award equal parenting time on an alternating-week basis, which it found to be "best for your child."

On May 11, 2023, the circuit court entered an order making these findings:

> The parties have joint custody of the minor child. Joint custody means that before a decision is made, the parties are charged with consulting one another on the issue, taking into consideration as to what is in the best interest of the child and not what is best for either party. In the event that the parties are unable to reach a mutual agreement, then Mother shall have final decision-making authority. Each party will make the day-to-day decisions regarding the child while she is in that party's physical care.

The circuit court awarded the parties parenting time of alternating weeks, to continue through the summer months, and alternating holidays.[2] This appeal followed.

II. *Standard of Review*

---

[2]The circuit court also modified Jacob's child-support obligation due to the new parenting schedule and ordered him to pay child-support arrears that had accrued after Jacob was discharged from active duty in the Navy and while he was developing his business. However, no issue regarding child support is raised by either party in this appeal.

In reviewing domestic-relations cases, we consider the evidence de novo but will not reverse a circuit court's findings unless they are clearly erroneous. *Sanchez v. Weeks*, 2023 Ark. App. 531, 678 S.W.3d 907. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Stehle v. Zimmerman*, 375 Ark. 446, 291 S.W.3d 573 (2009). When the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Brown v. Brown*, 2012 Ark. 89, 387 S.W.3d 159.

III. *Andrea's Points on Appeal*

On appeal from the circuit court's order that awarded equal parenting time, Andrea raises the following two arguments. Andrea argues that the circuit court erred in finding that a material change in circumstances was not required to modify the divorce decree in this regard, and she argues in the alternative that the circuit court erred in finding that the modification was in MC's best interest.

A. Material Change in Circumstances

For her first argument, Andrea argues that the circuit court erred in not requiring Jacob to prove a material change in circumstances in order to modify the custody arrangement in the divorce decree. Andrea contends that the divorce decree and incorporated Parenting Plan did not award joint custody and that the language therein "resembles an award of physical custody to [Andrea] subject to the visitation rights of

10

[Jacob]."  Andrea notes that pursuant to the Parenting Plan she had the "majority timesharing" with MC, and she asserts that for ten years following the divorce, she was MC's primary caretaker.  Therefore, Andrea argues, *Nalley* is not applicable, and it was Jacob's burden to prove a material change in circumstances.  *See, e.g.*, *Hoover v. Hoover*, 2016 Ark. App. 322, 498 S.W.3d 297 (holding that for a circuit court to change custody of children, it must first determine that a material change in circumstances has transpired from the time of the divorce decree).[3]

To address this point on appeal, a careful review of the supreme court's decision in *Nalley* is necessary.  In *Nalley*, the unmarried parties had a child together and lived together in Jonesboro.  They separated, and the mother moved to Little Rock.  The mother moved for a paternity adjudication and child support and asked that she remain the primary caretaker of the child.  The parties later stipulated, as reflected in the circuit court's order, that they would have joint legal custody with the mother serving as the primary caregiver.  Due to the two-hour driving distance between the parties, the circuit court in *Nalley* found in its order that "it was difficult to fashion a schedule so that both parties will have adequate time with the minor child."  The circuit court set a schedule that awarded the majority of

---

[3]Andrea also appears to argue in a separate part of her brief that Florida law should apply to Jacob's motion for reallocation of parenting time.  However, because Andrea failed to raise this argument below and, in fact, acquiesced to the application of Arkansas law, this argument is not preserved.  At the hearing on Jacob's motion, Andrea's counsel specifically argued, "I think the law is in my client's favor on the issue of reallocation.  If the court wants a brief, I'd be happy to brief the issue, but I believe that there has to have been *under Arkansas law* some change in circumstances to seek the modification that's required." (Emphasis added.)

the parenting time to the mother but stated in the order that "[t]he parties are encouraged to offer flexibility to the other party as much as possible." 2021 Ark. 191, at 3, 632 S.W.3d at 299.

Approximately seven months after the stipulated order was entered, the father filed a motion for modification stating that he was relocating to Little Rock and had a favorable work schedule. Because the circuit court's previous order awarded joint custody, the father asserted that he was entitled to equal time with the child. After a hearing on the matter, the circuit court found that the parties shared, and would continue to share, joint custody; that the "only reason in the initial Order that the parties did not share equal time with the child was that the Defendant lived in Jonesboro, Arkansas and the Plaintiff lived in Little Rock, Arkansas"; and that because the father had moved to Little Rock, "there is no discernible reason why each party could not share equal time with the parties' three-year-old child." *Id.* at 5, 632 S.W.3d at 300. The circuit court noted that, normally, the material-change-of-circumstances analysis has to do with the opposing party, but in this case, the mother's circumstances had not changed. The circuit court ordered a physical-custody schedule of alternating weeks.

On appeal, the mother in *Nalley* argued that the circuit court erred in finding that the father's change in employment and move to Little Rock constituted a material change in circumstances to warrant a change in custody to grant the father equal time with the child because the noncustodial parent cannot use the circumstances he created as grounds to

modify custody.  The supreme court in *Nalley* disagreed with the mother's argument, and

wrote:

> We agree with the circuit court's disposition for the following reasons.  While we recognize the parties' respective positions regarding a material change in circumstances, our review of the record leads us to conclude that a material-change-in-circumstances analysis is not triggered in this case as neither party sought an actual change of custody.  Further, we note that the case before us does not present an issue of visitation because the parties maintain joint custody.[4]  Stated differently, based on the specific facts of this case, the narrow issue before us is an adjustment of parenting time previously ordered by the circuit court.  In its July 17, 2019 original order, the circuit court awarded joint custody to Nalley and Adams.  The circuit court recognized that because Adams lived in Jonesboro, it was impossible at that point to split time equally between the parents.  Seven months later, through his amended motion for contempt and modification, Adams notified the circuit court that he was relocating to Little Rock and sought to exercise equal time with M.A.  Because Adams had relocated to Little Rock and based on its previous award of joint custody in the original order, the circuit court ordered that the parties share equal time with M.A.  Although the circuit court used the phrase "modification of the custody and visitation schedule," a careful review of the record demonstrates that the circuit court simply adjusted the parenting time schedules of the respective parties because Adams had moved to Little Rock, enforcing its July 2019 order.  Specifically, in its original order awarding joint custody, the circuit court found that

>> both parties are suitable to provide the care, love and nurture for the minor child.  Both are medical professionals, well-educated and capable of making good decisions for their daughter.  It is a compliment to both parties that they understood and agreed that there should be joint custody of the child recognizing that the shortfalls of either party were insufficient to prevent a joint custodial relationship.  To say it another way, both parties recognize that the other party is, and can be, a proper parent for the child.

> However, because of Adam's location in Jonesboro, the circuit court recognized that at the time of the 2019 order, shared time was impossible.  Once Adams relocated to Little Rock, in its July 8, 2020 order, the circuit court reiterated its July 2019 order of equal time and found:

---

[4]Joint custody means the approximate and reasonable equal division of time with the child by both parents individually as agreed to by the parents or as ordered by the court. Ark. Code Ann. § 9-13-101(a)(5) (Supp. 2021).

13

> [T]he Court has already ordered, and the parties agreed, that they shall have joint legal custody of the child. The only reason in the initial Order that the parties did not share equal time with the child was that the Defendant lived in Jonesboro, Arkansas and the Plaintiff and child lived in Little Rock, Arkansas. Since the Defendant has moved to Little Rock, there is no discernable reason why each party could not share equal time with the parties' three-year-old child. The law is clear in Arkansas that joint custody with equal time is favored.
>
> Accordingly, given our standard of review and the specific facts in this case, we cannot say that the circuit court erred in enforcing its original order through the adjustment of parenting time.

*Nalley*, 2021 Ark. 191, at 6–8, 632 S.W.3d at 301–02.

We find the case at bar analogous to *Nalley*. Although the Parenting Plan incorporated into the divorce decree did not use the terms "primary custody" or "joint custody," it provided that the "parties' goal" was to "share time with the child as equitable as possible" and that "the child has a right to spend substantial time with both parents." The Parenting Plan specifically provided for "shared parental responsibility," and stated, "It is in the best interest of the child that the parties have full shared parental rights and responsibilities to confer and make major decisions affecting the welfare of the child." The Parenting Plan speaks in terms of timesharing as opposed to visitation, and although it gave Andrea more timesharing with MC, it was at that time impossible to split the time equally due to the considerable distance between the parties. Finally, the Parenting Plan provided:

> The child named in this Parenting Plan is scheduled to reside the majority of the time with Mother. *This parent is designated as the custodian of the child solely for purposes of all other state and federal statues which require a designation or determination of custody. This designation does not affect either parent's rights and responsibilities under this Parenting Plan.*

14

(Emphasis added.) Our statutes do not require a designation of one party or the other as custodian, and, in fact, our statutes provide that joint custody is favored in Arkansas. *See* Ark. Code Ann. § 9-13-101(a)(1)(A)(iii). The foregoing provisions in the Parenting Plan incorporated into the divorce decree make it clear that the parties intended to share joint custody, but as in *Nalley*, equal parenting time was logistically impossible.[5]

Here, as in *Nalley*, Jacob did not seek a change in custody. He instead filed a motion for reallocation of parenting time to equal parenting time. And, as in *Nalley*, this case does not present an issue of visitation because the parties maintain joint custody. Therefore, pursuant to our supreme court's holding in *Nalley*, we hold under these circumstances that the circuit court did not clearly err in finding that a material change in circumstances was not required before adjusting the parties' parenting time.

## B. Best Interest

Andrea's remaining argument is that the circuit court erred in finding that a modification of custody or visitation was in MC's best interest. In support of this argument, Andrea asserts that she has been MC's primary caretaker since the parties' divorce, that Jacob

---

[5]We observe that Andrea acknowledged the joint-custody nature of the divorce decree when she petitioned to register the decree in Arkansas in March 2015 and stated, "The divorce decree awarded the parties *joint legal custody* of the minor child with Petitioner having the majority timesharing with the minor child." (Emphasis added.) Andrea's characterization of the divorce decree is similar to the language of the divorce decree in *Nalley*.

15

does not understand MC's needs and desires, that MC is a well-adjusted straight-A student, and that there is no issue with the existing custody arrangement or visitation schedule.

Giving due deference to the superior position of the circuit court in evaluating the witnesses, their testimony, and the best interest of the child, we cannot say that the circuit court clearly erred in finding that equal timesharing with each parent was in MC's best interest  The testimony showed that MC is bonded with Andrea and her family and is bonded with Jacob and his family, and awarding equal parenting time is consistent with the parties' expressed desires in the Parenting Plan that their goal was to share time with MC as equitably as possible and that MC has a right to spend substantial time with both parents.

IV.  *Conclusion*

In conclusion, we hold under the particular facts of this case that the circuit court did not clearly err in finding that a material-change-in-circumstances analysis was not triggered or in reallocating the parties' parenting time.  Accordingly, we affirm the circuit court's order.

Affirmed.

GLADWIN, J., agrees.

VIRDEN, J., concurs.

**BART F. VIRDEN, Judge, concurring**. I concur with the result of our decision today. For the reasons stated in my concurrence in *Cooper v. Kalkwarf*,[1] my dissent in *Nalley v.*

---

[1]2017 Ark. App. 405, at 16, 525 S.W.3d 508, 516, *vacated*, 2017 Ark. 331, 532 S.W.3d 58.

*Adams*,[2] and my recent concurrence in *Heileman v. Cahoon*,[3] I once again implore the legislature or our supreme court to provide some meaningful guidance for the benefit of trial courts, attorneys, and litigants. Are we to look to the plain language of a decree to determine if the parties share joint custody? *See Nalley*, *supra*. Or, are we to look to the actual practice of the parties to determine traditional custody/visitation despite the language in a decree? *See Cooper*, *supra*.

And, despite possibly tilting at windmills, I will again say that if the best interest of children is the polestar in every child-custody case, *Self v. Dittmer*, 2021 Ark. App. 85, 619 S.W.3d 43, that is where the analysis should start and end. Nothing is served by continuing to play word games with the ever-shifting terminology.

*Richard E. Worsham*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Traci LaCerra*, for appellee.

---

[2]2021 Ark. App. 167, at 34, 625 S.W.3d 336, 355, *vacated*, 2021 Ark. 191, 632 S.W.3d 297.

[3]2024 Ark. App. 72, at 12, 685 S.W.3d 256, 263.