Cite as 2025 Ark. App. 582

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-24-775

| | |
|---|---|
| JARED YOUNG<br><br>APPELLANT<br><br>V.<br><br>ANAYH TASH<br>APPELLEE | Opinion Delivered December 3, 2025<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26DR-24-355]<br><br>HONORABLE CECILIA DYER, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**WENDY SCHOLTENS WOOD, Judge**

Jared Young has filed this one-brief appeal from the Garland County Circuit Court's judgment of paternity adjudicating him the legal father of his minor daughter, MC, born to Anayh Tash on December 23, 2022. The court also awarded the parties joint custody and set forth a detailed "parenting time" schedule, which does not award the parties equal time with MC until MC completes kindergarten. On appeal, Young argues that the circuit court erred in not awarding him primary custody. In the alternative, he asks this court to modify the parties' parenting time to be "nearly equal." We affirm the court's award of joint custody, but we reverse and remand its determination of parenting time.

I. *Facts*

On May 2, 2024, Young filed a complaint for determination of paternity and custody alleging that he is the biological father of MC and requesting primary custody subject to

Tash's right to reasonable visitation. He attached a copy of the DNA test results confirming his parentage. Tash did not file an answer. On June 24, the circuit court entered an order of default judgment pursuant to Young's request and set a hearing for August 14.

Young testified at the hearing that he met Tash at a strip club where she was a dancer. He did not know that his brief relationship with Tash had resulted in a pregnancy until he received a letter from the Office of Child Support Enforcement in December 2023 stating that it had opened a case for child support for MC. Young said that he executed an acknowledgment of paternity and submitted to a DNA test on March 7, 2024, which confirmed that he is MC's biological father.

Young also said that he had unsuccessfully reached out to Tash in person and through text "at least five times" to facilitate visitation and had sent money to Tash for MC when Tash asked for it. He said that he was willing to "co-parent" with Tash but was requesting primary custody out of concern for MC because Tash lives with a felon and does not have a car. Young testified that he is employed, has a car, and has family living nearby to support him and MC. He said that he is the manager at his family's RV resort; lives in a thirty-seven-foot camper on the family property next to his parents' three-bedroom home; and lives next door to his nieces. He said he works on the property next to the family homes, that his schedule is flexible, and that his sister and parents could watch MC if he were unavailable during the day. He admitted he has no other children, has never taken parenting classes or read any parenting books, and has seen MC only once—at the paternity test.

Tash represented herself at the hearing and called her aunt, Latoria Robinson, as her first witness. Robinson testified that Tash is a "great mom"; attentive to both MC and Tash's infant daughter born in April 2024; has all the necessities for the children; and makes sure they are safe, happy, and healthy. She said that she keeps MC about once a month; sees Tash and her children at family functions; and takes Tash to appointments and wherever else she needs to go because Tash does not have a car. Robinson testified that their family members are "close-knit," all live close by, and all help provide transportation and other support to Tash when she needs it. She said that Tash has been unemployed since the birth of her second child in April, but she said that Tash was seeking employment and currently earns money by cooking for friends. She said that Tash lives in a one-bedroom HUD apartment, which has a bed for Tash and a crib for the babies. She said that she knows Delonce Woodson, the father of Tash's infant daughter, and that he currently shares Tash's apartment. Robinson testified that Woodson is employed, but she did not know where, and that he is a good dad, very attentive to both children, and has a close bond with both. She acknowledged that Woodson is a felon but said that it had "no bearings on who he is as an individual," that there are "just some things that happened in his life," and that she found Woodson to be loving and caring.

Tash's stepmother testified next. She said that she lives five to ten minutes from Tash, that Tash's two children come to her house often, and that Tash is a good mother. She said that MC is happy and learning. She said that she is available to help with the children and get them to appointments when needed. She said that Woodson is a nice person, helps Tash

3

with the children, and comes to her house for events with Tash "as a family." She said that Tash and Woodson live together but had broken up, and Woodson was living with Tash in order to help her with the children. She also testified that Young had never come to family events.

Finally, the court questioned Tash. Tash testified that Young told her he would be a good dad. She said that he had not been uncooperative or hostile, although she had some concern about the firearms he keeps in his camper. She said that he owns a lot of firearms and that he "3D prints" "ghost guns." She was concerned that MC would be unsafe there. She said that she is currently unemployed but cooks for friends to earn some money, receives a HUD reimbursement allowance to help with her rent and utilities, and that she and the children receive Medicaid. She believes that she is a good mother and said that she is very attentive to her children. She said that she and Woodson live together, but Woodson sleeps on the couch because they are no longer in an intimate relationship. She said that she was beginning a medical billing and coding class at Gateway Allied Health on August 22 so that she could then seek employment.

At the conclusion of the hearing, the circuit court told the parties that MC needed both parents in her life, that no testimony had been introduced suggesting that the parties had not acted "decent and civil" to each other, and that it was going to take the case under advisement to consider what is in MC's best interest. On August 22, the court entered a judgment of paternity awarding the parties joint custody, specifically finding that the presumption that joint custody is in the best interest of MC had not been rebutted by clear

and convincing evidence. The court then set forth a parenting-time schedule allowing Young an hour each day of supervised visitation with MC for one week, two hours of unsupervised visitation for the following week, and then from 2:00 to 6:00 p.m. on Saturday and 2:00 to 6:00 p.m. on Sunday on alternating weekends until MC is three years old. The court also awarded Young four hours on the major holidays. From the time MC turns three until she starts kindergarten, Young is allowed alternating weekends from 10:00 a.m. on Saturday through 6:00 p.m. on Sunday in addition to four hours on the major holidays. During kindergarten, Young is allowed alternating weekends from Friday after school through Sunday at 6:00 p.m. in addition to alternating major holidays from 10:00 a.m. to 6:00 p.m. It is not until the summer after MC completes kindergarten that the parties begin alternating weeks of physical custody.

## II. *Standard of Review*

This court performs a de novo review of child-custody matters, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Pace v. Pace*, 2020 Ark. 108, at 9, 595 S.W.3d 347, 352. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 224, 998 S.W.2d 1, 3 (1999). We recognize and give special deference to the superior position of a circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Cunningham v. Cunningham*, 2019 Ark. App. 416, at 4, 588 S.W.3d 38, 40.

## III. *Discussion*

Young appeals the judgment, contending that the circuit court should have awarded primary custody to him and, alternatively, that this court should modify parenting time to be "nearly equal." Pursuant to Arkansas Code Annotated section 9-13-101(a)(1)(A)(iv) (Supp. 2025), in an action concerning an original child-custody determination in a divorce or paternity matter, there is a presumption that an award of joint custody is in the best interest of the child, which may be rebutted if the circuit court finds by clear and convincing evidence that joint custody is not in the child's best interest. The primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *House v. House*, 2023 Ark. App. 477, at 6, 678 S.W.3d 824, 829.

Young's first argument focuses on the fact that Woodson, the father of Tash's youngest child, is a felon and lives in Tash's home with MC. He also argues that Tash is unemployed and lives in government-assisted housing. He claims that Tash's failure to contact him initially and her subsequent pregnancy with Woodson's child demonstrate her poor judgment, lack of stability, and inability to communicate with him. Considering this evidence, Young contends the circuit court clearly erred in failing to award him primary custody of MC and awarding the parties joint custody instead.

However, the record reflects that Tash's aunt and stepmother testified that Tash is a good mother; that they and other family members are available to, and do, help Tash with transportation and caring for the children when she needs; and that they like Woodson and think he is good with the children. Tash testified that she was beginning a medical billing and coding class the month of the hearing and planned to then seek employment. The

court's order specifically notes that there was an open case regarding child support. There was no evidence that Tash is unable to pay her bills.

Young's arguments are simply a request that we reweigh the evidence, reevaluate the witnesses' credibility, and evaluate both differently than did the circuit court. However, we do not reweigh evidence in these cases; rather, we give special deference to the superior position of the circuit court in weighing the evidence. *House*, 2023 Ark. App. 477, at 12, 678 S.W.3d at 831. In an action concerning an original child-custody determination in a divorce or paternity matter, there is a rebuttable presumption that joint custody is in the best interest of the child, which may be rebutted if the court finds by clear and convincing evidence that joint custody is not in the best interest of the child. Ark. Code Ann. § 9-13-101(a)(1)(A)(iv). On de novo review of this record, we are not left with a definite and firm conviction that the circuit court made a mistake in not awarding him primary custody.

As an alternative argument, Young contends that the circuit court clearly erred in its award of parenting time. We agree. The custody statute provides that joint custody means "the approximate and reasonable equal division of time with the child by both parents individually[.]" Ark. Code Ann. § 9-13-101(a)(5). "[C]ustody shall be awarded in such a way so as to assure the frequent and continuing contact of the child with both parents consistent with . . . [the welfare and best interest of the child]." *Heileman v. Cahoon*, 2024 Ark. 164, at 6, 699 S.W.3d 85, 89 (quoting Ark. Code Ann. § 9-13-101(b)(1)(A)).

Although a modification-of-custody rather than an initial-custody case, *Heileman* is instructive here. In *Heileman*, the parties had shared joint custody for almost four years with

7

approximately equal time with the children when the mother, Cahoon, filed a petition to modify custody. The circuit court failed to find a material change in circumstances warranting a change from joint custody, but it modified the parties' parenting time by reducing Heileman's time to Thursday afternoon through Monday morning on the second and fourth weekends of the month during the school year and continuing the alternating weeks between the parties during the summer. *Id.* at 5, 699 S.W.3d at 88–89. Heileman appealed, arguing that the court's significant modification of parenting time was a "de facto modification of custody" that denied him "approximate and reasonable equal division of time" with the children as required by the joint-custody statute. *Id.* at 7, 699 S.W.3d at 89. The supreme court agreed, explaining that joint custody is favored in Arkansas, and while not always possible, equal time is the goal. *Id.* at 8, 699 S.W.3d at 90.

> [T]he circuit court essentially eliminated joint custody in this case by reducing Heileman's parenting time from 50 percent initially to roughly 26 percent now. While courts cannot always make the parenting time an even split, the disparity here was too great. Further, while it is understandable that school and work schedules may change as children age, the appropriate response of the courts is to seek ways to modify the custodial schedule consistent with the law, the ability of the parties, and the best interest of the children, rather than to simply reduce parenting time from roughly half to just two weekends a month, as was done here.

*Id.* at 9, 699 S.W.3d at 90–91.

In the case at bar, we understand the circuit court's reluctance to award equal time to the parties immediately and appreciate that its award includes a transition period for MC to get to know Young. However, it is clear in Arkansas that joint custody with equal time is favored, and we cannot affirm the circuit court's order that relegates Young to extremely

limited visitation for almost five years—eight hours every other weekend for over a year until MC turns three; four nights a month for over two years until MC starts kindergarten; and then alternating weekends for another year until MC completes kindergarten—before allowing him equal parenting time. While "courts cannot always make the parenting time an even split, the disparity here was too great." *Id.* at 9, 699 S.W.3d at 91. Moreover, there was no evidence presented that an equal division of time was unworkable or that an equal or near equal division of time would result in a detriment to MC. Accordingly, we reverse and remand for the circuit court to enter an order consistent with this opinion.

Affirmed in part; reversed and remanded in part.

TUCKER and BROWN, JJ., agree.

*Robert S. Tschiemer*, for appellant.

One brief only.