Cite as 2026 Ark. App. 161

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-25-291

| | | |
|---|---|---|
| SHELBY ORTIZ | | Opinion Delivered  March 4, 2026 |
| | APPELLANT | APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT [NO. 67DR-18-131] |
| V. | | |
| | | HONORABLE BRYAN CHESSHIR, JUDGE |
| JOHNATHAN BAGLEY | | AFFIRMED |
| | APPELLEE | |

**MIKE MURPHY, Judge**

Appellant Shelby Ortiz appeals from the Sevier County Circuit Court order denying her request to change custody of the parties' two minor children, MC1 (DOB 07/31/12) and MC2 (DOB 08/18/16). On appeal, Ortiz argues that the circuit court erred in finding that she did not prove a material change in circumstances.  Alternatively, she argues that the court erred in applying the material-change-in-circumstances analysis. We affirm.

Ortiz and appellee Johnathan Bagley divorced by decree on October 26, 2018. The court awarded them joint custody of their two minor daughters, ordered that no child support be paid, and ordered that the parties equally split time with the minor children.

In January 2019, Bagley moved to change custody. Subsequently, an agreed order was entered on October 31, 2019. In the order, the court noted material changes before modifying custody and the visitation schedule. It maintained that the parties have "joint

custody" but designated Bagley as the "primary parent" and his home as the "primary residence" and gave him "the right to make decisions concerning the children's education." Regarding visitation, it provided that the minor children were to spend the majority of time with Bagley, and Ortiz had parenting time on alternating weekends, school breaks, and holidays—essentially, a 65/35 split of time. In lieu of child support, Ortiz was ordered to pay $400 more of the children's monthly daycare expenses.

Ortiz reopened the case in June 2023, alleging, "There has been a material change of circumstances of the parties and the subject children in that the time of possession of the children awarded to [Ortiz] should be modified to awarding each party equal year-round possession time with the children." She also asked the circuit court to modify the financial obligations to correspond with the possession change. Bagley moved for summary judgment, arguing that Ortiz failed to plead any genuine material facts supporting a material change in circumstances. In response, Ortiz filed a supplemental pleading alleging the following "material and substantial changes of circumstances":

a) The minor female children are older now and need additional time with their mother in order for her to be able to discuss with the children matters relating to feminine hygiene and other feminine matters;

b) Plaintiff, Jonathan Bagley, has remarried and been divorced causing emotional conflict in the minds of the children;

c) Movant has decreased her employment hours at St. Vincent Hospital in Hot Springs and has started working as the school nurse at Nashville Junior High School;

d) Movant and her husband have purchased a new home in a better environment;

e) Movant's mother and sister have relocated to Nashville from Magnolia which allows the children more opportunity to interact with them and the children's cousins;

f) Movant has birthed another girl child which would allow the subject children to interact with their half-sister;

g) The Arkansas law regarding custody of minor children now presumes it's in the best interest of the children that each parent should have equal time with the children;

h) The Summer visitation schedule of alternating weeks between the parties with the children has shown to be beneficial to the children and should be extended to include the entire year; and

i) The Movant's present income has changed and the calculations as to approximate child support to be paid by the parties has changed and should be utilized in determining present appropriate support to be paid.

A hearing was conducted on December 16, 2024, and established the following. On July 24, 2019, Ortiz remarried Kolton Ortiz, and two daughters were born of that marriage: one in 2020 and one in 2023. Ortiz wanted to encourage a sibling relationship with her two sets of daughters. Ortiz was previously renting a home in Nashville, Arkansas, but moved to Mineral Springs, Arkansas, with her new husband because "it was a better environment and better neighborhood, and they purchased a larger house." Ortiz estimated the children had 140 overnights with her in the past year. In May 2024, Ortiz resigned from her job as a school nurse to work as a nurse at a hospital in Hot Springs and as a home hospice nurse. At the time of the hearing, she was enrolled at UAMS earning her doctorate in family nursing. Ortiz emphasized that the children are "older now and needed their mom." Ortiz testified that one of the minor children was "standoffish" after Bagley's divorce from his

3

second wife. She acknowledged that Bagley does a good job with the children and gets them to all their appointments and extracurriculars and that she could not find any fault in the way he is raising the children.

Bagley and his current wife married in spring 2022 but then divorced in April 2023. They remarried in November 2023. Bagley does not think Ortiz is a bad mother, but he believes she is "a little irresponsible at times" and "could be there more for the minor children than she has been." When explaining his reasoning for his opposition to the modification, he stated he does not "feel like when she does get extra time she uses it." To support this, Bagley said she takes the minor children to stay overnight at her mom's or sister's home, sometimes two nights of the week she has the minor children. Additionally, he referenced some problems with Ortiz occasionally being late taking the children to a doctor's appointment or a game.

Kolton Ortiz testified that he thinks both Ortiz and Bagley are good parents.

Ortiz's mother and sister had moved closer and teach at the school the minor children attend. Ortiz's sister disagreed that Ortiz "pawned [the minor children] off" on anyone. Her sister acknowledged that Ortiz does seek help, but the family does it because they are family, and Ortiz is going through school.

At the conclusion of the testimony, Bagley moved for directed verdict, arguing that there had been no evidence presented of a material change in circumstances. The court agreed and entered its order on February 26. From that order, Ortiz timely appealed.

Here, our review is directed toward the circuit court's grant of Bagley's motion to dismiss. When deciding a motion to dismiss made after the presentation of the plaintiff's case, it is the circuit court's duty to determine whether, if the case were a jury trial, there would be sufficient evidence to present to a jury. *Hobby v. Walker*, 2011 Ark. App. 494, 385 S.W.3d 331. The circuit court does not exercise its fact-finding powers, such as judging the witnesses' credibility, in making this determination. *Id.* On appeal, we view the evidence in the light most favorable to the nonmoving party, giving the proof presented its highest probative value and taking into account all reasonable inferences deducible therefrom. *Id.* We affirm if there would be no substantial evidence to support a jury verdict. *Id.* In other words, when "the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed." *Wilson v. Powers*, 2012 Ark. App. 351, at 3–4, 415 S.W.3d 599, 602.

First, it is important to determine what type of custody arrangement Ortiz and Bagley share. This determination matters because if they do not have joint custody, then the circuit court correctly dismissed Ortiz's motion. Conversely, if Ortiz and Bagley share joint custody of the children, then a "parenting time" analysis as contemplated by *Nalley v. Adams*, 2021 Ark. 191, 632 S.W.3d 297, might arguably apply. *See id.* (holding that the material-change-in-circumstances analysis is not triggered when the parties maintain joint custody and neither party seeks an actual change of custody); *see also Sellew v. Davis*, 2024 Ark. App. 390, 691 S.W.3d 285.

Notably, in *Nalley* the supreme court distinguished between visitation exercised by a noncustodial parent and the allocation of time between joint custodians. When a parent who lacks joint custody requests additional time beyond that provided in the decree, the request constitutes a modification of custody or visitation and therefore requires proof of a material change in circumstances. By contrast, when parties share true joint custody, a reallocation of time between equal custodians does not alter the underlying custodial status and therefore does not, by itself, trigger the material-change analysis.

Turning to the arrangement at hand, while it is true that the 2019 order did use the phrase "joint custody," it also designated Bagley the "primary parent," with "visitation" awarded to Ortiz. Our courts have consistently held that this type of language creates an ambiguity that must be resolved; therefore, review the parties' subsequent statements and conduct. We resolve the ambiguity by looking to other parts of the order, to the parties' testimony about what they intended, and to their conduct. *Singletary v. Singletary*, 2013 Ark. 506, at 10–11, 431 S.W.3d 234, 241; *see also Cooper v. Kalkwarf*, 2017 Ark. 331, at 16, 532 S.W.3d 58, 67 (also emphasizing that a joint-custody arrangement does not necessarily involve a precise "50/50" division of time).

Here, after review, it is clear that the parties did not share joint custody of the children. Bagley was granted rights that exceeded those of Ortiz under the agreed order; for example, Bagley had the exclusive right to designate the primary residence of the children; he had the "right to make decisions concerning the children's education" while Ortiz had the "right to [be] consulted" about the children's education; and Bagley had the right to

6

"designate persons" to be notified in the event of an emergency, whereas Ortiz only had the right to "be designated." Concerning time with the children, the agreed order used the term "visitation" rather than "timesharing" and did not contain language explicitly stating that the goal of the arrangement was to share equal time. *But see Sellew*, 2024 Ark. App. 390, at 15, 691 S.W.3d at 294 (holding a true "joint custody" arrangement was established even when the "parenting plan" did not mention the term "joint custody" but spoke of shared parental responsibility and stated that the goal was to share time with the child as equitably as possible).

Because the parties did not share joint custody, it was therefore appropriate for the circuit court to treat the motion as one to change custody or visitation. *See Baggett v. Benight*, 2022 Ark. App. 153, at 9, 643 S.W.3d 836, 841 ("Because the requisite burden of proof is the same for both a modification of custody and a modification of visitation, we need not decide which one Sam requested.").

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Ellington v. Ellington*, 2019 Ark. App. 395, 587 S.W.3d 237. To change custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody, with the sole consideration being the best interest of the children. *Nguyen v. Yassin*, 2025 Ark. App. 589, at 5, ___ S.W.3d ___, ___. The reasons for requiring more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child, and

7

to discourage repeated litigation of the same issues. *Hobby v. Walker*, 2011 Ark. App. 494, at 7–8, 385 S.W.3d 331, 335. The party seeking modification has the burden of showing a material change in circumstances. *Id.*

Ortiz argues that the circuit court clearly erred in finding that there had been no material change in circumstances. She does not dispute the court's finding that Bagley "is doing a good job of raising the minor children." Instead, she asserts that the circuit court failed to consider several significant factors: the emotional impact of Bagley's divorce and subsequent remarriage; the birth of Ortiz's two additional children, which required increased bonding time; and changes in her work schedule, educational pursuits, and relocation to a home in a more favorable environment. Ortiz further contends that, since the entry of the 2019 agreed order, statutory law has evolved to establish a rebuttable presumption in favor of joint custody; she claims this is a development the court should have taken into account. At a minimum, Ortiz maintains that the cumulative effect of these circumstances constitutes a material change warranting modification. We disagree.

Concerning the emotional hardship following Bagley's divorce and remarriage, Ortiz relies on her testimony that the divorce caused one minor child to become "standoffish" and prompted the other to remark that there was "a lot of fighting." However, as Ortiz concedes in her brief, the adverse impact described was minimal.

The next factors Ortiz asserts the court failed to consider—additional children with her current husband, adjusting her work schedule, pursuing further education, and relocating to a better environment—involve changes in her own circumstances. We have

8

consistently held that a change in the circumstances of the noncustodial parent alone is not sufficient to justify a change of custody. *Piker v. Piker*, 2022 Ark. App. 480, at 6, 655 S.W.3d 754, 758.

Moreover, while Ortiz briefly worked in Nashville, she had returned to Hot Springs by the time of the hearing. Concerning the half siblings, we held in *Middleton v. Middleton*, 83 Ark. App. 7, 15–16, 113 S.W.3d 625, 629–30 (2003), that remarriage and birth of a new child does not constitute a material change. And while furthering one's education is commendable, we have held that voluntarily choosing a better life—standing alone—does not constitute a material change. *Jones v. Jones*, 326 Ark. 481, 491, 931 S.W.2d 767, 772 (1996); *see also Orantes v. Orantes*, 2011 Ark. 159, at 8, 381 S.W.3d 758, 764 (custody should not be modified to punish or reward parents, and greater resources or income alone are insufficient).

The last factor Ortiz relies on to support her contention of a material change in circumstances is the change in law to Arkansas Code Annotated section 9-13-101 (Supp. 2025). Since the agreed order was entered, the statute now creates a rebuttable presumption that joint custody is in a child's best interest. It further provides that in the event a court determines that the presumption has been rebutted and does not award joint custody, the legislature provided that the noncustodial parent is still entitled to "reasonable parenting time." Ark. Code Ann. § 9-13-101(b)(1)(A)(vii). Although these laws apply specifically to initial custody determinations, they have been considered and applied in other custody determinations recognizing the preference for divorced parents to share equal time with their

children unless clear and convincing evidence demonstrates it is not in the best interest of the child. *See generally Wallis v. Holsing*, 2023 Ark. App. 137, at 8, 661 S.W.3d 284, 289. That said, as it stands, a change in the law alone does not constitute a material change in circumstances. Our courts continue to require proof of a material change as a prerequisite for modifying custody. *See Stewart v. Stewart*, 2025 Ark. App. 97, at 14 ("While we have struggled with how to implement the legislative direction in favor of joint custody, Ark. Code Ann. § 9-13-101(a)(1)(A)(iv)(*a*) (Supp. 2023), especially when it comes to modifications, we have concluded that there is one constant. Any modification of an original determination requires changed circumstances[.]")

Even considering all the factors together, there has not been a material change because Ortiz has presented only minor complaints and self-created conditions. The circuit court did not err in finding that Ortiz failed to meet her burden of demonstrating the existence of a material change in circumstances.

Alternatively, Ortiz contends that, even absent a material change in circumstances, she is entitled to additional parenting time pursuant to *Nalley*, 2021 Ark. 191, 632 S.W.3d 297. However, as explained above, the parties did not share joint custody. Accordingly, the circuit court did not err in declining to treat this case as a *Nalley* adjustment in parenting time.

Affirmed.

KLAPPENBACH, C.J., agrees.

VIRDEN, J., concurs.

**BART F. VIRDEN, Judge, concurring**. I agree with the result of our decision today. I agree that the trial court did not err in finding there was not a material change of circumstances. However, I believe that such showing was required only because both parties said it would be required in the last agreed order. I am not so sure that it would otherwise be required after the *Nalley* decision. Is it *Nalley* or not? And if it is, what does that mean?

The case before us is yet another example of the tumult resulting from the supreme court's decision in *Nalley v. Adams*, 2021 Ark. 191, at 7, 632 S.W.3d 297, 301, and its creation of "adjustment of parenting time." Litigants, attorneys, and especially circuit courts need to know what the rules are before they can attempt to comply with them. What is "joint legal custody," "joint custody with primary custody," "joint custody with specific visitation," et cetera?

We know that joint custody is favored as a matter of public policy in the state and has been codified by the legislature. Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (Supp. 2025). It has been declared by our court and the supreme court. *Young v. Tash*, 2025 Ark. App. 582, ___ S.W.3d ___; *Heileman v. Cahoon*, 2024 Ark. 164, 699 S.W.3d 85. Joint custody has even been defined by legislation as "the approximate and reasonable equal division of time with the child by both parents individually as agreed to by the parents or as ordered by the court." Ark. Code Ann. § 9-13-101(a)(5). Yet we continually see hybrid or "alternative" definitions used by trial courts. Post-*Nalley*, we see litigants asking for an adjustment of parenting time instead of change of custody, as was the case here. Sometimes we declare in our opinions that we can look beyond the language of the order that purports to establish joint custody to

11

the actual arrangement and practices of the parties. (*Heileman*, *supra*). And sometimes we don't (*Nalley*, *supra*; *Szwedo v. Cyrus*, 2020 Ark. App. 319, 602 S.W.3d 759).

As a result of this Gordian knot, all the stakeholders (a currently fashionable term) previously mentioned are left on a rudderless ship hoping for favorable winds. It need not be so. The requirement of magic words like "material change of circumstances" in some instances no longer serves a purpose. The effect of language used is cautioned by the supreme court in *Heileman*: "[W]hen circuit courts are adjusting parenting time, they should be cognizant of the terminology they use and pay attention to whether an adjustment in schedule might turn into a de facto change in custody." 2024 Ark. 164, at 8, 699 S.W.3d at 90.

So what is a trial court to do? In *Nalley*, the order said it was "joint legal custody," and then went on to set out a specific *visitation* schedule for the father. 2021 Ark. 91, at 2, 632 S.W.3d at 299. True joint custody was not reasonable due to the distances between the parties. (But what is that distance threshold? There is always *some* reason for not having true joint custody.) So in *Nalley* the parties did not actually have joint custody, either by statutory definition or in practice. Nonetheless, our supreme court decided that the parties *did* have joint custody, and the change sought was not a change of custody or visitation despite the assertions of the parties and the trial court treating it as such. The supreme court went on to (rightly in my opinion) affirm the trial court's grant of more time with the father to achieve what would actually be joint custody by creating a new label of "adjustment of parenting

time." *Id.* at 7, 632 S.W.3d at 301. The end result was the same as ordered by trial court and only made sense given the change in residence of the father.

In the case before us, the same is true. The order says the parties shall have joint custody but set out specific visitation that was clearly less than 50/50. Borrowing language from *Nalley*, Ms. Ortiz didn't petition for a change of custody but rather an adjustment to "parenting time." Thus, I am left with strong doubt that, on the operative facts, this case is easily distinguishable from the *Nalley* decision. Even more interesting is the congruity with *Nalley* in that here, Ms. Ortiz was seeking to move closer to true joint custody as was the case in *Nalley*—a disposition presumed to be in the children's best interest.

Again, I implore the supreme court, the legislature, or some other higher power to clarify this area of the law. It can be done effectively and simply. There may be some rending of garments or gnashing of teeth at such a sea change, but it is logical to do so at this time. All the precedent that has led to this current state of linguistic gymnastics was premised on the old notions of child custody: one parent has custody, and one parent gets visitation. As our supreme court and legislature have plainly pointed out, that is no longer the case.

The simple solution I suggest is this: begin with the presumption that there should be joint custody as defined by the statute. If, in the determination of the circuit court, that cannot be achieved for whatever reason (geographic distance, abilities of the parties, needs of children, etc.), the circuit court can order primary custody and visitation accordingly, keeping in mind what we have always claimed was the polestar consideration, the best interest of the child(ren). *Grayson v. Anderson*, 2023 Ark. App. 428, at 5, 675 S.W.3d 900,

13

903. The trial court should give the reasons for not ordering joint custody. Later, if those reasons change or new considerations come into play, either party can return to court and ask for change. It should not matter who created the change or if it is "material." The only thing the trial court should be concerned with is whether that change is enough to move the best-interest needle.

As an appellate court, we would then abide by our standards of deferring to the trial court on matters of credibility and findings of fact. In doing so, we would all actually be considering the best interest of the children first rather than first determining which label fits the proceeding. There are no cases in which the circuit court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Shrable v. Shrable*, 2025 Ark. App. 454, 724 S.W.3d 605.

It seems that in child-custody cases, we can no longer see the forest because we have become tasked with assigning specific labels and applying disparate burdens to its composite trees. Here, regardless of label, the parties agreed—and the court accepted the agreement in the last order—that a material change of circumstances must occur, and they should be held to that agreement.

Accordingly, I concur.

*Langdon*Davis, L.L.P.*, by: *Brent M. Langdon* and *Colton R. Langford*, for appellant.

*Brasel Law Firm, PLLC*, by; *Aaron R. Brasel*, for appellee.